SPEARS & IMES LLP

51 Madison Avenue
New York, NY 10010
tel  212-213-6996
fax 212-213-0849

Joanna C. Hendon
tel 212-213-6553
jhendon@spearsimes.com

April 15, 2018

**BY ECF & E-MAIL**

The Honorable Kimba M. Wood
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York  10007

     Re:    *Cohen v. United States*, No. 18-mj-3161 (KMW)

Dear Judge Wood:

     We write on behalf of President Donald J. Trump, an Intervenor in this action.  The President objects to the government's proposal to use a "taint team" of prosecutors from the very Office that is investigating this matter to conduct the initial privilege review of documents seized from the President's personal attorney, Michael D. Cohen.  The cases upon which the government relies do not authorize this extraordinary measure, and, to our knowledge, no court in this Circuit has ever forced a privilege-holder, over his objection, to rely on government lawyers to protect his attorney-client privilege as to materials that were seized from his own lawyer's office.

     For the reasons detailed below, the Court should enter an order enjoining the government from proceeding with any review of the seized materials, and directing the government to provide a copy of the seized materials to Mr. Cohen so that our firm and the President may review for privilege those seized documents that relate to him.

I.    Preliminary Statement

     Recognized for more than four centuries, the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law," *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), and the "most revered," *United States v. Bauer*, 132 F.3d 504, 512 (9th Cir. 1997).  Nothing less than the fair and just operation of our legal system depends on the privilege.  Without it, no client could speak freely with counsel, and no attorney could competently serve her client.

> [The privilege's] purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*Upjohn*, 449 U.S. at 389. The privilege, therefore, must be scrupulously protected. *See In re von Bulow*, 828 F.2d 94, 98-99 (2d Cir. 1987) (granting writ of mandamus and vacating district court's discovery order compelling disclosure of attorney-client communications because "[c]ompliance with the [discovery] order destroys the right sought to be protected"). Furthermore – and of utmost importance for present purposes – "the [attorney-client] privilege belongs solely to the client[.]" *Id.* at 100.

On April 9, 2018, in an operation disquieting to lawyers, clients, citizens, and commentators alike, the government executed search warrants for the office, residences, and effects of Mr. Cohen. The government concedes that, in the process, it seized materials that are potentially privileged. (*See, e.g.*, ECF #1, Government's Opposition to Michael Cohen's Motion for a Temporary Restraining Order ("Gov't Opp.") at 2-3, 5-6.)

The question now before the Court is, who should perform the initial review of the seized materials to assess whether they are, or are not, subject to a valid claim of privilege: a taint team consisting of colleagues of the prosecutors assigned to this investigation, or the President, who is the holder of the privilege and, as such, has a unique interest in ensuring that every privileged item is fully protected from improper disclosure? The question answers itself. As in instances when the government relies on a subpoena *duces tecum* to obtain evidence, the privilege-holder should be permitted to review the materials for privilege in the first instance.

II.   Compelling the Privilege-Holder, Over His Objection, to Rely on
      a Team of Prosecutors to Protect His Privilege As to Materials
      Seized from His Lawyer Would Be Unprecedented in This Circuit

The government contends that use of a taint team is a "common procedure" in this District. (Gov't Opp. at 7 (quoting *United States v. Ceglia*, No. 12 Cr. 876 (VSB), 2015 WL 1499194, at *1 (S.D.N.Y. Mar. 30, 2015).) But that is not so where the documents to be reviewed were obtained by the government pursuant to a search of a lawyer's office and the privilege-holder objects to a taint team procedure.

None of the cases cited by the government presents this scenario. And one of those cases, far from commending the use of a taint team, lays bare in harrowing detail the prejudice and waste that can flow from allowing prosecutors, in the first instance, to serve as self-appointed proxies for the privilege-holder for the purpose of identifying privileged material. In *S.E.C. v. Lek Securities Corp.*, No. 17 Civ. 1789 (DLC), 2018 WL 417596 (S.D.N.Y. Jan. 16, 2018) (cited at Gov't Opp. at 7), federal prosecutors in New Jersey disclosed to the SEC documents they had seized from the privilege-holder. *Id.* at *1. Despite the use of search terms and filters, the prosecutors repeatedly produced to the SEC material that was privileged. *Id.* at *1-3.

Nor are the remaining cases cited by the government on this point persuasive. Those cases (1) present scenarios under which the privilege-holder consented to the use of a taint team, *see Ceglia*, 2015 WL 1499194 (privilege-holder consented to taint team review of materials produced pursuant to grand jury subpoena); *United States v. Patel,* No. 16 Cr. 798 (KBF), 2017 WL 3394607 (S.D.N.Y. Aug. 8, 2017) (no objection to taint team review of personal e-mail accounts); (2) involve searches or subpoenas aimed not at the lawyers relied upon by the privilege-holder, but at the privilege-holder's own e-mail accounts, personal devices, home, or business, *see United States v. Lumiere*, No. 16 Cr. 483 (JSR), 2016 WL 7188149, at *7 n.10 (S.D.N.Y. Nov. 29, 2016) (seizure of defendant's digital storage devices); or (3) address the issue of whether to use a taint team after charges were filed against the privilege-holder, *see United States v. Winters*, No. 06 Cr. 54 (SWK), 2006 WL 2789864 (S.D.N.Y. Sept. 27, 2006); *United States v. Grant*, No. 04 Cr. 207 (BSJ), 2004 WL 1171258 (S.D.N.Y. May 25, 2004). None of those circumstances is present here.

We know of just one case in this Circuit involving the search of a law office where, prior to review, the party asserting privilege objected to the use of a taint team: the *Stewart* case. *United States v. Stewart*, No. 02 Cr. 395 (JGK), 2002 WL 1300059 (S.D.N.Y. June 11, 2002). In *Stewart*, the court rejected all of the government's arguments in favor of a taint team and granted the defendant, as the party asserting privilege, the relief she sought. *Id.* at *3 (appointing a neutral special master to review materials seized from defendant's law suite). Notably, not only did Judge Koeltl appoint a special master over the government's objection, he also ordered that the defendant be provided a copy of the materials seized from her office so that she could review them herself for privilege. *Id.* at *10.[1]

Seizure of documents in a lawyer's possession presents a special case. Because the business of a lawyer is performing legal work and providing legal advice to clients, experience teaches that privileged and otherwise protected material will have been both received and created in the regular course of that work. *See, e.g., id.* at *3 ("Both parties also rightly agree that law office searches raise special concerns, which impose a need for heightened care, due to the fact that law offices often contain attorney-client materials and work product.").[2] When a lawyer's files are seized by the government, a taint team member having no first-hand involvement in the underlying representation can only guess as to the nature of the relationships at issue and the

---

[1] In *United States v. Feng Ling Liu*, No. 12 Cr. 934 (RA), 2014 WL 101672 (S.D.N.Y. Jan. 10, 2014), the court rejected the argument that the government's use of a taint team required suppression of the seized evidence. *Id.* at *12. There, however, counsel failed to propose an alternative procedure prior to commencement of review, despite having suggested that she would do so. *Id.* Further, although the *Liu* court suggested that a screening mechanism adequately protects the privilege, the case the court cited in support approved only of a screening procedure used during the *search*, not the review, *United States v. Hunter*, 13 F. Supp. 2d 574, 583 (D. Vt. 1998), and explicitly cautioned against leaving the review of "potentially privileged records" to "a prosecutor behind a 'Chinese Wall,'" *id.* at 583 n.2.

[2] Work product relating to the President among the seized materials is also protected from disclosure. *See generally Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).

circumstances under which particular documents came into being.  No one in that position can adequately safeguard the privilege.

Various documents that, to a taint team, may appear on their face to be non-privileged may in fact be covered by the attorney-client privilege.  Merely by way of example, a document or communication need not contain the name of the client to be privileged.  Communications to or from a third party acting as an agent of the client or the lawyer may be privileged.  *See, e.g., In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 217 (S.D.N.Y. 2001) ("[C]ourts have held that the attorney-client privilege protects communications between lawyers and agents of a client where such communications are for the purpose of rendering legal advice." (collecting cases)).  And privileged information that a lawyer intentionally or negligently shares with a third party outside the privileged relationship without the client's consent remains privileged because a lawyer cannot, without proper authorization, waive his client's privilege.[3]  *See von Bulow*, 828 F.2d at 100.  These are only examples, but they demonstrate why search terms and other filtering mechanisms applied by a government taint team will not sufficiently protect the privilege.

Details of the government's proposal in this case highlight the risk of using a taint team.  For example, the government states "the Filter Team will review and release communications to the Investigative Team [*i.e.*, prosecutors and agents assigned to the investigation] between Cohen and persons with whom Cohen undisputedly does not have an attorney-client relationship." (Gov't Opp. at 5.)  Under this proposal, the taint team would make the final decision – conclusively and without the participation of Mr. Cohen, the President, or anyone else – as to whom Mr. Cohen "undisputedly" does not share an attorney-client relationship with.  (*Id.*)  Further, as to those communications between Mr. Cohen and his acknowledged clients, the taint team would immediately release all such communications to the Investigative Team that it concludes are "not privileged," again without any input from the privilege-holder.  (*Id.* at 6.)  These critical decisions concerning a sacred privilege are not for a team of prosecutors to make.[4]

The government has assured the Court that "under no circumstances will a potentially privileged document or a document potentially subject to the crime-fraud exception be provided to or described to the Investigative Team without the consent of the privilege-holder or his/her counsel, or the court's approval." (Gov't Opp. at 6.)  Presumably the government intends by those words to comfort the Court, but the government simply cannot make that guarantee.  *See, e.g., Lek*, 2018 WL 417596, at *1-3.  As discussed above, under the government's proposal, the taint team will turn over to the Investigative Team all materials that the taint team itself deems not privileged.  If such materials contain any privileged information that the taint team failed to identify, the President's privilege will be irremediably violated.  The President, the public, and

---

[3] Accordingly, the government's assertion that any "disclosure of a privileged communication to a third party waives privilege as to that communication" (Gov't Opp. at 5 n.3) is an incomplete statement of the law.

[4] For the same reasons, a special master will not adequately protect the President's privilege.  Even a presumptively neutral third person cannot provide that which is indispensable here – intimate familiarity with the underlying facts and zealous advocacy on behalf of the privilege-holder.

the government have a vital interest in ensuring the integrity of the privilege review process, and
the taint team procedure is plainly inadequate to the task.

III.     The Government's Arguments in Favor of a Taint Team Do Not
         Outweigh the Grave Risks Posed by Such a Procedure Here

        The government will argue that permitting the President (or anyone other than its self-
selected taint team) to review the seized documents for the purpose of identifying those
potentially subject to privilege will prejudice the investigation by delaying the date by which the
Investigative Team will receive the taint-free documents. (*See, e.g.*, Apr. 13, 2018 Transcript at
25-26.) This argument is unavailing.

        All parties agree that the Investigative Team's review must await privilege review by
*someone*. To the extent the government is touting how quickly the taint team will complete its
review, that is not a welcome reassurance, but cause for alarm. Privilege review requires
informed and considered attention, and the government's commitment to rushing the review
process, *see, e.g.*, *id.* at 24 (government explains its aim of "get[ting] this review done very
quickly"), makes clear that the taint team will not zealously protect the President's privilege.
Any "delay" of the government's investigation resulting from a comprehensive review for
privilege is a necessary delay. Now that the government has seized the materials through
extraordinary process in order to alleviate concerns it had about following the traditional route to
obtain documents from a lawyer, the focus must shift to the critical concerns associated with the
attorney-client privilege of a third-party client of the lawyer whose documents have been seized.
Approaching this matter from that perspective, the government has not identified any interest
requiring an expedited process. The lodestar is fairness – not speed.

        There is, as well, cause for concern that a taint team could not evaluate Mr. Cohen's files
(and, in particular, those relating to the President) fairly. The prosecutors have, in their public
filing, already pre-judged the matter of privilege, repeatedly urging that few privileged
documents are likely to be found among the seized materials. (*See, e.g.*, Gov't Opp. at 1
(asserting that the U.S. Attorney's Office and FBI "have reason to believe" that Cohen has "a
low volume of potentially privileged communications"); *id.* at 4 (predicting that "the
overwhelming majority of evidence seized during the searches will not be privileged material");
*id.* at 13 (asserting that "Cohen is in fact performing little to no legal work").) These statements
by the government indicate a disinclination to find privilege, a bias that virtually guarantees that
there will not be a fair privilege review of the seized materials.

        There is also the matter of the staggering amount of attention trained on this
investigation, Mr. Cohen, and the President. Under even the best of circumstances, the
appearance of fairness and justice is compromised by the government's use of its own personnel
to review potentially privileged material:

        [T]he implementation of a Chinese Wall, especially in the context of a criminal
        prosecution, is highly questionable, and should be discouraged. The appearance
        of Justice must be served, as well as the interests of Justice. It is a great leap of
        faith to expect that members of the general public would believe any such

Hon. Kimba M. Wood                                                                                    Page 6
April 15, 2018

>     Chinese wall would be impenetrable; this notwithstanding our own trust in the
>     honor of an AUSA.

*In re Search Warrant for Law Offices Executed on Mar. 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y.
1994). These concerns are magnified here. In the highly politicized, even fevered, atmosphere
that envelops this matter, it is simply unreasonable to expect that a team of prosecutors, even if
not directly involved in the investigation of Mr. Cohen, could perform a privilege review in the
manner necessary to safeguard the important interests of the President, as the holder of the
privilege.

IV.     The President Should Be Permitted to Conduct the Initial Review of All
        Seized Materials Relating to Him to Ensure That His Privilege Is Safeguarded

        The Court indisputably has the discretion to reject the government's proposed use of a
taint team, *see Stewart*, 2002 WL 1300059, at *4, and fairness and justice – as well as the
appearance of fairness and justice – require that, before they are turned over to the Investigative
Team, the seized materials relating to the President must be reviewed by the only person who is
truly motivated to ensure that the privilege is properly invoked and applied: the privilege-holder
himself, the President.

        The level of protection provided to the privilege-holder in the familiar context of a grand
jury subpoena *duces tecum* should be accorded to the President here. When a grand jury
subpoena for documents is served, the recipient, with the advice of his counsel, reviews the
documents in his possession and produces the responsive documents, with one critical exception:
with notice to the government, the recipient withholds all responsive documents that he and his
counsel conclude are subject to a privilege, identifying such documents in some fashion without
disclosing the privileged contents, often by means of a privilege log. The government is then in
a position to challenge the subpoenaed party's privilege designations as to each and every item
so designated, and, in the event of a dispute, the court determines which documents are
privileged (and thus remain withheld) and which documents are not privileged (and thus are
produced). *See generally In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A)
Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 322-23 (S.D.N.Y.
2003).

        Of course, here, the government chose not to serve a grand jury subpoena, but instead to
execute search warrants on an attorney's office, residences, and effects. The government asserts
that this truly extraordinary measure was necessary to prevent the destruction of evidence.
(Gov't Opp. at 14.) But even if that is true, the exigency has dissipated entirely, as the seized
materials are now in the government's control, beyond any of the potential misuses of the
materials that motivated the seizure in the first place. Therefore, the fact that the government
seized privileged documents rather than subpoenaing them is now irrelevant – except for the
profoundly important privilege issues that the government's unilateral and peremptory action has
raised.

        The government insists that it is "entitled" to the seized materials. (*Id.* at 2, 19.)
However, to the extent the government seized privileged information, it is not entitled to *have*
that information, much less review it. *See, e.g., von Bulow*, 828 F.2d at 99 (recognizing the

"urgent" "need for timely protection [from disclosure] . . . where the discovery sought is . . . blanketed by the absolute attorney-client privilege").  It simply cannot be the case that by acting in such an aggressive, intrusive, and unorthodox manner, the government has somehow created an entitlement on its own part to eliminate the President's right to a full assertion of every privilege argument available to him.  Indeed, if the Court were to endorse the use of a taint team under these circumstances, raids of law offices would likely become more commonplace, as they would permit the government to wrest from the privilege-holder the ability, in the first instance, to assert privilege over documents and rightfully withhold them.

        The government has done what it has done, and it has thereby protected against every notional evil it could have articulated in favor of its action.  It no longer has any cognizable interest in proceeding by any procedure other than that which is typically employed to ensure that the attorney-client privilege is fully protected.  The Court should order the affected parties to revert now to the well-established procedures used to protect the privilege in the subpoena context:  the privilege-holder reviews the documents in the first instance and asserts the privilege over documents he believes are protected from disclosure, and any disputes between the privilege-holder and the government are resolved by the Court.  Specifically, the Court should order the government to provide Mr. Cohen with a complete copy of the seized materials so that the President can then review the materials relating to him for privilege, pursuant to a reasonable schedule set by the Court.[5]

        Finally, courts in several cases have registered regret, in retrospect, that taint teams were allowed to conduct the initial privilege review.  *Stewart*, 2002 WL 1300059, at *6 ("[A]t least three courts that have allowed for review by a government privilege team have opined, in retrospect, that the use of other methods of review would have been better.") (citing *United States v. Skeddle*, 989 F. Supp. 890, 898 n.6 (N.D. Ohio 1997); *United States v. Hunter*, 13 F. Supp. 2d 574, 583 & n.2 (D. Vt. 1998); *United States v. Neill*, 952 F. Supp. 834, 841 & n.14 (D.D.C. 1997)).  This Court has the opportunity at the outset of the matter to establish an efficient, fair procedure that avoids the grave risks posed by taint team review:  initial review by the privilege-holder.  The government can articulate no conceivable prejudice from such a procedure other than an unsubstantiated claim of potential "delay," and that concern pales in comparison to the President's vital interest in the full and fair protection of his attorney-client privilege.

---

[5] Under this procedure, the taint team would have the opportunity – after initial review by the President – to challenge any assertions of privilege by the President.  Accordingly, the government's concern that "[i]n the face of inaccurate and/or overbroad claims of privilege, the USAO-SDNY would be seriously prejudiced if it were not able, through a Filter Team, to evaluate the validity of such claims" (Gov't Opp. at 9) is groundless.

Hon. Kimba M. Wood                                                      Page 8
April 15, 2018

IV.    Conclusion

       For the foregoing reasons, the President respectfully requests that the Court issue an
order:

1.     Enjoining the government from using a taint team to conduct an initial privilege
review;

2.     Directing the government to provide Mr. Cohen and his counsel with a copy of
the materials seized from Mr. Cohen by the government on April 9, 2018;

3.     Directing Mr. Cohen and his counsel, after the government provides Mr. Cohen
and his counsel with a copy of the seized materials, to identify to the President all
seized materials that relate to him in any way and to provide a copy of those
materials to him and his counsel;

4.     Directing the President and his counsel, after they review the materials provided
by Mr. Cohen, to identify for the government's taint team all materials over which
the President asserts privilege;

5.     Authorizing the government's taint team to raise any objections to the President's
assertions of privilege with the Court; and

6.     Prohibiting the government's taint team from providing the Investigation Team
with (a) any materials over which the President asserts a privilege without
objection from the taint team, and (b) any materials that the Court rules are
privileged over the taint team's objection.

Respectfully submitted,

Joanna C. Hendon
Christopher W. Dysard
Reed M. Keefe

cc:    All Counsel (by ECF)