

Boston  Brussels  Chicago  Dallas  Düsseldorf  Frankfurt  Houston  London  Los Angeles  Miami
Milan  Munich  New York  Orange County  Paris  Seoul  Silicon Valley  Washington, D.C.

Strategic alliance with MWE China Law Offices (Shanghai)

Todd Harrison
Attorney at Law
tdharrison@mwe.com
+1 212 547 5727

April 16, 2018

**CORRECTED COPY**

**VIA ECF**

United States District Judge Kimba M. Wood
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:     *Michael D. Cohen v. United States of America*, 18-MJ-3161 (KMW)

Dear Judge Wood:

We represent plaintiff Michael D. Cohen ("Mr. Cohen") in the above referenced matter. We write in response to the Court's request for a letter submission in response to issues that arose at the various hearings on April 13, 2018, related to the warrants executed by the Government in an early morning raid upon Mr. Cohen's law office, home, and temporary hotel residence on April 9, 2018.

As the Court is surely aware, there is a growing public debate about whether criminal and congressional investigations by the government are being undertaken impartially, free of any political bias or partisan motivation.  It is in this climate that the Government executed an unprecedented search warrant – instead of using its less onerous subpoena power – upon the personal attorney of the President of the United States.  In the process, the Government seized more than a dozen electronic devices and other items that include documents and data regarding topics and issues that have nothing to do with the probable cause upon which the search warrant was granted in the first place.

Mr. Cohen's application for a temporary restraining order, preliminary injunction, and the appointment of a Special Master to conduct a review of materials seized by the Government for both responsiveness and privilege should be granted because, as described below, it is merited under existing Second Circuit case law.  But, just as importantly, Mr. Cohen's application should be granted so that even the *appearance* of impropriety is avoided, by appointing a Special Master to conduct the review of Mr. Cohen's data, including any documents relating to communications with the President of the United States covered by the attorney-client privilege.  The choice here is between allowing the Government to make an end run around the Fourth Amendment by scooping up and viewing all of the communications seized in the search of a lawyer's office (in

United States District Judge Kimba Wood
April 16, 2018
Page 2

this case, all of the documents and data of the President's personal attorney) regardless of whether the documents seized were the subject of the judge's original probable cause determination, or appointing a neutral third party to conduct that review.  If the government can obtain a search warrant for particular items but then seize and review everything in an attorney's office, the protections of the Fourth Amendment are meaningless.  We therefore respectfully request that the Court either allow Mr. Cohen's counsel and counsel for the privilege holders to conduct the initial review, or appoint an independent third party – a Special Master – to do so.

## A.  Response to the Court's Direction to Submit Names Relevant to a Privilege Review

In terms of relevant names to be submitted for a privilege review, the Court will recall that although almost all of the discussion in court on Friday, April 13, 2018, related to Mr. Cohen's clients, our application also covers law firms representing and providing advice as well as work-product to Mr. Cohen.  The relevant law firms and attorneys that have advised and provided work-product to Mr. Cohen and may be contained in documents and data seized in relation to the search warrants at issue here include:

> 1) Stephen Ryan, James Commons, and Sam Neel of McDermott Will & Emery LLP, in relation to the Special Counsel's investigation and the related House of Representatives and Senate inquiries regarding alleged Russian interference in the 2016 election, as well as campaign finance matters;

> 2) David M. Schwartz of the law firm German, Schwartz & Malito LLP, in relation to two litigations for libel, which include one federal and one state action;

> 3) Brent Blakely of the law firm Blakely Law Group, in relation to *Clifford v. Trump*, L.A. Super. Ct. Case No. BC 696568;

> 4) Michael D. Sirota and David Bass of the law firm Cole Schotz, P.C., for trusts and estates and corporate legal advisory issues; and

> 5) Sheri A. Dillon of the law firm Morgan Lewis.[1]

---

[1] Because we do not have access to the files seized by the government, we are unable to run searches to search for every legal advisor of Mr. Cohen.  Therefore, we reserve our right to amend this list and to provide the Court and the Special Master with any additional legal advisors of Mr. Cohen.  In addition, in Mr. Cohen's capacity as a member of the Trump Organization, he was party to communications from a number of outside attorneys and without review of the seized materials we cannot ascertain a full list of those attorneys today, but we could endeavor to produce that list this week.

United States District Judge Kimba Wood
April 16, 2018
Page 3

**B.  Information Concerning Mr. Cohen's Attorney-Client Relationships**

From approximately 1991 to 1995, Mr. Cohen was a practicing attorney with the law firm of Estrin & Associates.  Mr. Cohen worked on numerous litigations during this period.  Mr. Cohen introduced numerous clients of his own to the firm and also worked on many other client's legal matters.  We do not know whether any of the documents or other privileged materials that Mr. Cohen worked on during this period are among the materials seized by the U.S. Attorney's Office.

From approximately 1996 to 2006, Mr. Cohen maintained his own private legal practice, Michael D. Cohen & Associates.  During that period he worked on numerous legal matters for hundreds of different clients.  Mr. Cohen's practice included legal work on numerous litigations, real estate transactions, and corporate matters.  We do not know whether any of the privileged materials that Mr. Cohen worked on during this period are included in items seized by the U.S. Attorney's Office.

In or around 2006, Mr. Cohen joined the law firm of Phillips Nizer LLP.  During his brief tenure at Phillips Nizer, Mr. Cohen represented approximately 15 clients and worked primarily on real estate and corporate matters.  We do not know whether any of the privileged materials that Mr. Cohen worked on during this period were among the items seized by the U.S. Attorney's Office.

From approximately 2007 to January 2017, Mr. Cohen worked at the Trump Organization in the role of Executive Vice President and Special Counsel to Donald J. Trump.  In that capacity, Mr. Cohen served as legal counsel to the Trump Organization, Donald J. Trump.  Mr. Cohen worked predominantly on real estate, contract, and litigation matters for the Trump Organization.

In the period of 2017 to 2018, Mr. Cohen maintained a solo law practice.  There were at least ten clients during this period.  Mr. Cohen's role varied for these clients.  For seven clients the work appears to be providing strategic advice and business consulting, for which privilege would not attach.  In any event, none of these seven client files are likely to have any responsive information on the issues sought in Attachment A of the search warrant.  If necessary, we would be willing to provide the names of the business clients if a Special Master is appointed so the Special Master can determine responsiveness.

For at least three other clients that we have identified in the period of 2017 to 2018, the work was more direct legal advice or dispute resolution--more traditional legal tasks.  All of these clients are individuals.  One of these legal clients is Donald J. Trump.  Another legal client is Elliot Broidy.  The third legal client directed Mr. Cohen to not to reveal the identity publicly.  Upon information and belief, the unnamed legal client's matters are not responsive to any matter covered by Attachment A of the search warrants.

United States District Judge Kimba Wood
April 16, 2018
Page 4

In or around March 2017, Mr. Cohen entered into a strategic relationship with a major multinational law firm ("Law Firm-1"). As part of that strategic relationship, Mr. Cohen referred approximately 5 clients to Law Firm-1. Mr. Cohen likely participated in communications with attorneys and clients at Law Firm-1 regarding the client matters that he had referred to the firm. We are not listing them today and defer to Law Firm-1 and its clients to assert a privilege claim.[2]

## C.  Revealing Client Names Would Violate The Attorney-Client Privilege

As to the one unnamed legal client, we do not believe that Mr. Cohen should be asked to reveal the name or can permissibly do so. Under Second Circuit law, the identity of a client may be protected from disclosure by the attorney-client privilege in "special circumstances." *Vingelli v. Drug Enf't Agency*, 992 F.2d 449, 450 (2d Cir. 1993) ("Recognizing that client identity . . . [is] not presently sheltered under the privilege, defense counsel urges that the information sought falls into one of the special exceptions to that rule. What those 'special circumstances' are that would protect this information has not been precisely defined. What they are remains as enigmatic as the smile that Leonardo Da Vinci left us on the face of the Mona Lisa. In light of defense counsel's argument, our task is to examine the special circumstances rules to see if they apply in the present case."). Although there is a paucity of case law explaining factual situations that constitute "special circumstances," we respectfully submit that the circumstances do not get more special than the unique circumstances presented by this case.

To the extent it bears repeating, federal prosecutors have seized the data and files of the personal attorney of the President of the United States. This is completely unprecedented. Prior to the execution of the warrants at issue, prosecutors from the Southern District of New York had already intercepted emails from the President's personal lawyer. They apparently executed the search warrants at issue here only after they searched for private emails between the President of the United States and his personal lawyer and realized that "zero emails were exchanged with President Trump." Gov't Opp. Br. at 13. Rather than continue less intrusive investigative means, the USAO took the extraordinary step of raiding several locations, including Mr. Cohen's home, hotel room, and law office and took everything. This is perhaps the most highly publicized search warrant in the history of recent American criminal jurisprudence. It is paramount that the review of Mr. Cohen's data and documents be handled in such a way as to eliminate, as much as possible, even the "appearance of unfairness." While Mr. Cohen would prefer for his lawyers to conduct the initial review, appointing an independent third party Special Master would – for the Government and for Mr. Cohen – avoid even the "appearance of unfairness." We believe that the unnamed client may allow Mr. Cohen to provide the names to a Special Master.

---

[2] Because we do not have access to the files seized by the government, we are unable to run searches to search for every legal client of Mr. Cohen. Therefore, we reserve our right to amend this list and to provide the Court and the Special Master with any additional legal clients of Mr. Cohen.

United States District Judge Kimba Wood
April 16, 2018
Page 5

### D.  Mr. Cohen Has a Duty of Loyalty to his Clients Which Requires Him Not To Reveal His Clients Identities, Except Donald J. Trump, Who Is Disclosed

There are ethical considerations here too.  Under Rule 1.6 of the New York Rules of Professional Conduct, Mr. Cohen is duty-bound to keep private his clients' "Confidential information."  NY Rules of Professional Conduct, 1.6.  There are three general categories of "Confidential information":  (a) information protected by the attorney-client privilege; (b) information likely to be embarrassing or detrimental to the client if disclosed; or (c) information that the client has requested to be kept confidential."  *Id.*

As discussed above, given the "special circumstances" of this case, the identities of Mr. Cohen's non-public clients are protected by the attorney-client privilege.

In addition, the disclosure of the identities of Mr. Cohen's clients here clearly is "likely to be embarrassing or detrimental to the client if disclosed."  Rule 1.6(b).  It almost goes without saying, unfortunately, that none of Mr. Cohen's clients want to be associated with the government raid on his home and law office, or want to be affiliated in any way with the proceedings here and the attendant media coverage.  In addition, the government has stated in its public filing that there is an "ongoing grand jury investigation being conducted by the USAO-SDNY and the FBI" and that a magistrate judge found probable cause to believe that devices containing evidence of a number of federal crimes may be located in Mr. Cohen's law office, home, and hotel room.  Gov't Opp. Br. at 3.  Moreover, without proffering any evidence of its applicability, the government referred to the "crime-fraud" exception in its opposition brief, (Gov't Opp. Br. at 6, 10), and during oral argument.  4/13/18 Tr. at 28.  The government also referred to its search warrant application – which we have never seen – as including "evidence for the crimes that were set forth in [a] detailed affidavit."  4/13/18 Tr. at 60.  Since there is, according to the government, an "ongoing grand jury investigation" (which is required to remain secret), it would most certainly be embarrassing and "detrimental" to Mr. Cohen's clients if he were to reveal their identities publicly.

Further, following the raid of Mr. Cohen's office and residences, there has been a deluge of press.  Much of this press coverage has been very negative towards Mr. Cohen and his law practice, and articles purport to describe non-public identities of such clients and the matters on which he has worked.  Formally disclosing the identity of his clients publicly – who have no connection to the matters referenced in the Search Warrant's Attachment A – at this time would be "embarrassing" and would similarly be considered "confidential" under Rule 1.6(b).

The New York State Bar Association has published opinions indicating that revealing client names in certain circumstances would violates an attorney's duties owed to clients.  In the context of this particular case, where the Government has repeatedly asserted that it has been conducting a criminal investigation of Mr. Cohen and his dealings with clients, revealing the identities of clients would reveal "confidential information," in violation of Rules 1.6 and 1.9. *See* NYSBA Comm. on Prof's Ethics, Op. 1026 (2014) ("the basic rule [is] that disclosure of

United States District Judge Kimba Wood
April 16, 2018
Page 6

seemingly innocuous client information can, in context reveal confidential information in violation of Rules 1.6 and 1.9").  "Although the fact that the client consulted a lawyer and the general nature of the consultation will not usually be privileged, . . . the client's name, the fact that the client consulted a lawyer and the general nature of the consultation may nevertheless constitute 'secrets' of the client which the lawyer may not disclose."  NYSBA Comm. on Prof's Ethics, Ethics Op. 1088, http://www.nysba.org/CustomTemplates/Content.aspx?id=62856 (quoting N.Y. State 720 (1999)).  "If a client has requested that lawyer keep the client's identity confidential, then the lawyer is duty-bound not to disclose the client's name to potential clients." *Id.*  "If the client has not requested that the lawyer keep the client's name and the fact of representation confidential, then the lawyer must determine whether such information is publicly known and, if not, whether disclosing the information is likely to be embarrassing or detrimental to the client."  *Id.*  "If the information is not generally known, however, then the law firm may disclose it only if it concludes that the information would not be embarrassing or detrimental to the client."  *Id.*  "This determination is necessarily fact specific."  *Id.*  "This will depend on the client and the specific facts and circumstances of the representation, and, if the lawyer is not reasonably confident of the client's views, it may require the lawyer to consult with the client." *Id.*

In order to follow the Court's direction, we have reached out to as many of Mr. Cohen's former legal clients from 2017-2018 as possible, including the business clients for which we are not claiming privilege, in order to obtain their consent to have their identities revealed.  Of the three legal clients, Donald J. Trump and Elliot Broidy have allowed us to reveal the fact that they are legal clients.  The other legal client indicated that they did not authorize their name to be publicly filed in connection with this matter and directed Mr. Cohen to appeal any order to disclose their name.  We believe that if a Special Master was appointed, that legal client would allow their name to be disclosed to the Special Master.

### E.  The April 13, 2018 Hearings and the Legally Operative Facts Necessary to Decide Mr. Cohen's Application.

We respectfully submit that the Court is in possession of the *legally operative* facts and circumstances needed to rule upon Mr. Cohen's application for a temporary restraining order and a preliminary injunction and request that a Special Master be appointed to conduct the review of the documents seized by the Government (as opposed to the USAO's proposed "filter team").  During the course of the April 13, 2018 hearing, it became apparent that the parties here agree that the *United States v. Stewart* and its related decisions are the controlling decisions with respect to deciding the question currently before the Court:  should it grant Mr. Cohen's application and appoint a Special Master?

One of the principal concerns addressed in *Stewart* – the "appearance of fairness" – is of paramount importance in this matter.  It is important given the national and political implications but, it is also important for the protection of the oldest and most venerated evidentiary privilege in American law, the attorney-client privilege.  As stated in our moving papers, it is critical that

United States District Judge Kimba Wood
April 16, 2018
Page 7

the review of privileged materials must "not only be fair but also appear to be fair," and "the appearance of fairness helps to protect the public's confidence in the administration of justice and the willingness of clients to consult with their attorneys." *United States v. Stewart*, No. 02-cr-395, 2002 U.S. Dist. LEXIS 10530, at *23 (S.D.N.Y. June 11, 2002). We respectfully submit that the appointment of a Special Master would help ensure the public's confidence in the "appearance of fairness" in this matter.

In addition, a Special Master should be appointed in the interest of the administration of justice to ensure that the Government does not have access to materials for which they have not yet shown would be obtained through a valid search warrant through a showing of probable cause. In obtaining the search warrant, the Government had to make a showing of probable cause that Mr. Cohen is in possession of evidence of a crime. The search warrant is designed to allow the Government to obtain that material – and that material only. But now the Government is in possession of all of Mr. Cohen's data, including materials protected by the attorney-client privilege, in a classic example of overreach beyond what it would be entitled to under the Fourth Amendment. Indeed, the Fourth Amendment to the Constitution states that all search warrants must "particularly describe[] the place to be searched" and "the things to be seized" and that "probable cause" must be shown "by Oath" that the "things to be seized" are evidence of a crime. U.S. Const. Amend. IV. In *Andersen v. Maryland*, the Supreme Court explained that this "particular description" provision prohibits "general, exploratory rummaging in a person's belongings and prevents the seizure of one thing under a warrant describing another." 427 U.S. 463, 480 (1976). We therefore respectfully request that the Court step in here to preserve the attorney-client privilege and work-product doctrine protections, prevent a wide-ranging search of Mr. Cohen's data for which the Government has failed to make a probable cause showing, and ensure fairness and the even-handed administration of justice by appointing a Special Master to review these materials for responsiveness and privilege.[3]

Moreover, the hearings on April 13, 2018, got away from the *legally operative* facts upon which the decision in *Stewart* turned. In *Stewart*, the FBI and NYPD raided the Law Offices of Lynne Stewart, Geoffrey Stewart & Sabrina Shroff, a criminal defense firm who represented alleged terrorists and seized the files of Lynne Stewart, who was indicted for conspiring to provide material support to terrorists. Stewart requested that a Special Master be appointed to review the materials seized for privilege and responsiveness to the warrant. In *Stewart*, the court weighed factors such as other attorneys in the office, the location of working computers and files, storage locations, the volume of material seized by the Government, the potential volume

---

[3] We must also note that this search was fundamentally unfair to Mr. Cohen and his clients who entrust him with confidential information. Mr. Cohen, as a duly licensed member of the bar of New York since 1992, takes his duties as a lawyer and officer of the Court seriously. He has cooperated with the investigations conducted by the United States House of Representatives Permanent Select Committee on Intelligence, the United States Senate Select Committee on Intelligence, and the Office of the Special Counsel by producing documents after they were reviewed for privilege and responsiveness by his counsel.

United States District Judge Kimba Wood
April 16, 2018
Page 8

of privileged and work-product materials likely contained in the material seized by the
Government, the time it would take to conduct a privilege review, the time it would take for the
searched party's counsel to produce a privilege log, and the ability to have a timely review of any
issues concerning privilege calls. *Stewart*, 2002 U.S. Dist. LEXIS 10530, at *1-2, 8. Nowhere
in this list of considerations is the identity of the clients.

Friday's hearings were marked by a focus on whether Mr. Cohen could ethically divulge
the names of his non-publicly known clients. We still believe that Mr. Cohen is not allowed by
the ethical canons to divulge the names of clients in this case where the identities of the clients
are not publicly known. We recognize that the Court has stated that it is "likely to discount the
argument" that the Government has seized thousands of privileged documents unless Mr. Cohen
produces a list containing the identities of his clients at this time. *See* 4/13/18 Tr. at 65.
However, we respectfully request that the Court rule on Mr. Cohen's application based on the
information provided above, which is as much as we feel that Mr. Cohen can legally and
ethically share. As a result, in Mr. Cohen's original application and in the letter herein, we
provided the above information concerning the factual matters relevant to the *Stewart* analysis so
that the Court may rule on the question before it:  should it grant Mr. Cohen's application and
appoint a Special Master?

### F.  Appointing a Special Master Solves the Issues Raised by Mr. Cohen and Protects the Integrity of the Government's Investigation

As detailed herein, we believe that the most proper and practical solution to this
unprecedented question and attendant circumstances is for this Court to appoint a Special Master.
First and foremost, the appointment of a Special Master will provide for the fair administration
of justice here and avoid even a hint of impropriety here in the review of Mr. Cohen's data and
documents. Second, the appointment of a Special Master will protect the integrity of the
Government's investigation from the toxic partisan politics of the day and attacks on the
impartiality of the Justice Department and the USAO. Frankly, we hoped that the USAO would
join this application and work with us to devise an expedient set of rules and procedures for a
Special Master's review of the seized materials that also takes into account the interests of the
various privilege holders, as described in detail in the letter submitted on behalf of Intervenor,
Donald J. Trump, on April 15, 2018. Third, the appointment of a Special Master will allow Mr.
Cohen to observe his ethical obligations to his clients as well as protect the identity of his clients
by providing them, when necessary, to the Special Master on an *in camera* basis.

We appreciate the time that the Court has taken to consider Mr. Cohen's applications.

Sincerely,

 /s/    Todd Harrison

Todd Harrison

United States District Judge Kimba Wood
April 16, 2018
Page 9


/s/     Stephen Ryan

Stephen Ryan

cc:     Counsel of Record