*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 16, 2018

**BY ECF**
Hon. Kimba M. Wood
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *Michael Cohen v. United States*, **18 Mag. 3161 (KMW)**

Dear Judge Wood:

    The United States Attorney's Office for the Southern District of New York ("USAO-SDNY") writes in response to the letter filed by President Donald J. Trump in support of Michael Cohen's motion for a temporary restraining order. The President's letter (the "Letter") makes substantially the same arguments already made by Cohen, and does not—and cannot—justify the relief he seeks: namely, to block the government from carrying out a judicially-approved search, and for the President and his counsel to themselves act as a privilege screen for all materials lawfully seized by the government from Cohen's premises that "relate [to the President] *in any way*." (Letter at 8) (emphasis added). Granting such relief would mark a serious departure from the accepted, normal practices of this District and erect an unprecedented and unwarranted obstacle to the government's ability to investigate attorneys for their own conduct, in this case or any other. For the reasons that follow, and those set forth in the USAO-SDNY's memorandum in opposition to Cohen's motion (Dkt. 1 ("USAO Br.")), the Court should deny the motion. That is, the Court should permit the USAO-SDNY to review the evidence lawfully seized pursuant to judicially-authorized search warrants, consistent with a rigorous Filter Team protocol that is common practice in this District.

    *First*, despite the Court's invitation to the President to make "any arguments that are different from those made by Mr. Cohen" (4/13/18 Tr. 19), he has not done so. The closest the President comes to making a new argument is his assertion that the cases cited by the USAO-SDNY are distinguishable because none involves documents seized "pursuant to a search of a lawyer's office [where] the privilege-holder objects to a taint team procedure." (Letter at 2). That is an immaterial distinction. None of the cases cited by the President attaches any significance to whether it is the privilege-holder or his attorney asserting an objection. *See, e.g.*, *United States v. Winters*, No. 06 Cr. 54, 2006 WL 2789864, at *2 (S.D.N.Y. Sept. 27, 2006) (approving prosecution filter team over objection of privilege-holder); *United States v. Grant*, No. 04 Cr. 207 (BSJ), 2004 WL 1171258, at *2 (S.D.N.Y. May 25, 2004) (same). That is unsurprising, because, as the Court recognized at Friday's hearing, "[i]t appears to me that the [President's] interests are completely

parallel with those of Mr. Cohen." (4/13/18 Tr. 18). The President has offered no reason why that would be different here, where Cohen has asserted the privilege on his behalf.

Indeed, the main difference between the President's brief and that of Cohen is that the President rejects Cohen's alternative proposal of a special master.[1] (Letter at 4 n.4). But despite advancing the extreme position that he should review the lawfully-obtained files in the first instance, the President still cannot identify a single case in which a court has ordered such a remedy, and for good reason—the President's proposal would set a dangerous precedent. If, as the President contends, the only person who could ever ensure that privilege is properly invoked is the privilege-holder (Letter at 6) then, contrary to common practice in this District, no filter team would *ever* be effective in screening the results of a search warrant. The rule would not be limited to cases involving searches of attorney's offices. Under the President's theory, every person who has communicated with a lawyer would be given the power to turn every search warrant into a subpoena and to demand the return of lawfully-seized evidence in order to undertake their own review of the evidence. Such a rule is unworkable and ripe for abuse.

While the President advances this proposal, he offers no information regarding the scope of any privileged communications between himself and Cohen that were potentially seized. As previously stated, the results of USAO-SDNY's search warrants on multiple email accounts used by Cohen revealed *zero* communications between Cohen and the President. (USAO Br. 13). The President's letter does not address this.[2] Although Cohen and the President may have had an attorney-client relationship, the President's failure to proffer facts supporting his assertion that privileged communications were seized is significant, because the President asks that *all* of the seized materials be turned over to Cohen—not just those relating to the President. (Letter at 8). This remarkably overbroad request could not be justified under any circumstances.

*Second*, the President appears to misunderstand the USAO-SDNY's proposed review protocol when he states that "as to those communications between Mr. Cohen and his acknowledged clients, the taint team would immediately release all such communications to the Investigative Team that it concludes are 'not privileged,' again without any input from the privilege-holder." (Letter at 4). This is wrong. As set forth in our prior brief, for any communications between Cohen and a client, the USAO-SDNY would (1) confer with counsel for the privilege holder at the appropriate time and before any such material is shared with the Investigative Team and, if no agreement can be reached, submit the material under seal to an appropriate court for a determination as to privilege; (2) bring the document to a court for an *ex parte* determination if appropriate;[3] or (3) if the document is of obviously minimal probative value,

---

[1] On this point, the USAO-SDNY agrees with the President: A special master is not more warranted than a filter team in this case. It does not follow, however, that only the privilege holder himself can fairly conduct the review.

[2] This is especially troubling in light of the Court's expressed desire at Friday's hearing to understand more about the nature and extent of Cohen's legal practice, including whether there is a basis to believe that potentially-privileged documents existed in what was seized.

[3] *Ex parte* consideration would be sought in extraordinary cases where it is absolutely necessary—for instance, where the explanation of why a document is not privileged would jeopardize a covert aspect of the investigation.

place the document into the "Privileged" category as a means of efficiently completing the review. (USAO Br. 6).  We emphasize the following three points:

- Other than the extraordinary circumstances described in footnote 3, *supra*, when there will be review by the Court, the President and his counsel will have the opportunity to review for privilege *any* communications between himself and Mr. Cohen (if there are any) and to interpose objections *before* such communications are turned over to the Investigative Team.

- The USAO-SDNY has invited Cohen and the President to provide to our Filter Team any information – *i.e.*, a client list, or search terms, or identification of any agents who allegedly may be part of the attorney-client relationship (*see* Letter at 4) – to aid the Filter Team's review; and

- The Filter Team has an incentive to be *conservative* in its determination of what is not privileged, and respectful of potential privilege, not only to ensure adherence to applicable ethical obligations, but also to avoid additional litigation at a later date.  This incentive more than adequately addresses the wholly theoretical category of documents posited by the President, consisting of documents that are somehow privileged despite lacking a client or agent identifier and which pass through the filter team's close review without recognition of its possibly privileged status.[4]

Insofar as the President raises hypothetical concerns about the Filter Team's ability to accurately assess privilege without "intimate familiarity with the underlying facts and zealous advocacy on behalf of the privilege-holder," (Letter at 4 n.4), those concerns are adequately addressed by the Filter Team procedures.  It is undisputed that the USAO-SDNY's use of filter teams in white collar cases is a "common procedure" in this District. *United States v. Ceglia*, 2015 WL 1499194, at *1 (S.D.N.Y. Mar. 30, 2015).  The President offers no facts in support of his argument that it would be any more difficult for the Filter Team to evaluate the nature of his communications than in any other case.

---

[4] And, in the event the Investigative Team believes that a document that has been released to it for review may in fact be subject to the attorney-client privilege, it will stop reviewing and refer the document back to the Filter Team. The circumstances of the Investigative Team's exposure to the document will be recorded in the event it may be relevant to any derivative-use or taint litigation, and counsel and the Court will be notified. (Similar procedures are commonplace in litigation where there may be an inadvertent transmission of privileged information.  *See* Fed. R. Civ. P. 26(b)(5) & 45(e)(2); Fed. R. Evid. 502(b); N.Y. Rule of Professional Conduct 4.4(b).)  That said, the risk of inadvertent production of a potentially privileged document to the Investigative Team is particularly remote here, where—on top of its other rigorous procedures previously outlined for the Court—the Filter Team will review every document twice before it is released to the Investigative Team.

*Third*, the President's proposal would place the responsibility for making an initial review of the material into the hands of a party with an incentive to make overbroad claims of privilege. (*See, e.g.*, USAO Br. 9 (assertion by the Trump Organization that "We consider each and every communication by, between, or amongst Mr. Cohen and the Trump Organization and each of its officers, directors, and employees, to be subject to and protected by the attorney-client privilege and/or the work-product privilege")).

*Finally*, the President contends that the USAO-SDNY's prior brief somehow creates "cause for concern that a taint team could not evaluate Mr. Cohen's files (and, in particular, those relating to the President) fairly." (Letter at 5). This claim is baseless. Our prior brief explained that the investigation relates in large part to conduct by Cohen in his personal business and financial dealings, which have nothing to do with any legal practice he may have. There is no basis for the assertion by the President that career federal prosecutors, designated to a Filter Team, cannot fairly evaluate whether certain files obtained by a judicially-authorized search warrant contain privileged material. Further, as the Honorable Barbara Jones held in *Grant*, "[a]lthough some of these documents likely contain attorney-client privileged communications, the Government should be allowed to make fully informed arguments as to privilege if the public's strong interest in the investigation and prosecution of criminal conduct is to be adequately protected." *See Grant*, 2004 WL 1171258, at *2. The Filter Team protocol protects that public interest.

The President cites the "appearance of fairness and justice" in support of his request for a privilege review procedure that is unheard of in this District. If anything, given the "attention trained on this investigation" (Letter at 5), the appearance of fairness and justice requires not that the President be entitled to different treatment, but that the common procedure of a Filter Team be followed in the normal course.

To that end, in *Grant*, Judge Jones expressly based her decision to approve a prosecution Filter Team—over the objection of the privilege-holder—"upon the expectation and presumption that the Government's privilege team and the trial prosecutors will conduct themselves with integrity." *Grant*, 2004 WL 1171258, at *3. Judge Jones stated that it "seems to me that the Government is entitled to that presumption and that society's interest in enforcing the criminal laws outweighs the limited incursion into the attorney client privilege that this process permits."

*Id.* The President does not—and cannot—proffer any reason whatsoever why the USAO-SDNY is not entitled to the same presumption here.

        Respectfully submitted,

        ROBERT KHUZAMI
        Attorney for the United States,
        Acting Under Authority Conferred by 28 U.S.C. § 515

By: _____
        Thomas McKay
        Rachel Maimin
        Nicolas Roos
        Assistant United States Attorneys
        (212) 637-2268 / -2460 / -2421