I4cscoh9                                                                 1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
    *In the Matter of Search Warrants*
3   *Executed on April 9, 2018*
    ------------------------------x
4   MICHAEL D. COHEN,

5                    Plaintiff,

6          v.                                    18 Mag. 3161

7   UNITED STATES OF AMERICA,

8
                     Defendant.
9
    ------------------------------x
10                                               New York, N.Y.
                                                 April 26, 2018
11                                               12:00 p.m.

12  Before:

13         HON. KIMBA M. WOOD,

14
                                                 District Judge
15

16

17         APPEARANCES

18

    MCDERMOTT WILL & EMERY LLP
19        Attorneys for Plaintiff
    BY:  TODD HARRISON
20        STEPHEN RYAN

21

    ROBERT S. KHUZAMI
22        Acting United States Attorney for
          the Southern District of New York
23  THOMAS A. McKAY
    RACHEL A. MAIMIN
24  NICOLAS ROOS
    ANDREA GRISWOLD
25        Assistant United States Attorneys

Also Present:


SPEARS & IMES LLP
     Attorneys for Intervenor
     Donald J. Trump, President
BY:  JOANNA C. HENDON
     REED M. KEEFE
     CHRISTOPHER W. DYSARD


LAW OFFICES OF ALAN S. FUTERFAS
     Attorneys for The Trump Organization
BY:  ELLEN RESNICK
     RICHARD BRUECKNER


JOHN BROWNING
     Attorney for Third Parties ABC, Inc. and CNN, Inc.


MICHAEL AVANATTI
     Attorney for Interested Party
     Stephanie Clifford a/k/a "Stormy Daniels"

 1                (Case called)

 2                THE COURT:  Good morning.

 3                I'd like to begin by asking the government for an oral

 4     update.

 5                MR. McKAY:  Yes, your Honor, as we said in our letter

 6     of this morning, the headline is that, with a few

 7     qualifications that I will describe now, we think we are on

 8     schedule as we described in our earlier letter to the Court.

 9     We made our first production yesterday, which was I believe two

10     days ahead of what we anticipated as the first date of rolling

11     production.  We expect to make another substantial production

12     tomorrow.

13                With respect to the three categories of documents or

14     materials, the first is hard category documents, the second is

15     hard drives or electronic storage devices, and the third is

16     cell phones or iPads.

17                With respect to hardcopy documents, we have been

18     scanning those documents so they can be on an online system.  I

19     think there were about eight boxes.  We have seven done.  One

20     hopefully should be completed today.  Those documents will then

21     be loaded both into Relativity, which is a third-party vendor

22     that the government is planning to use and I believe at least

23     some intervenor counsel are planning to use.

24                We will also be giving those in a load file to counsel

25     for Mr. Cohen, who I understand may be using a different data-

 1   base, which may cut down on some of the lag time.  As I

 2   mentioned, there is a little lag between when we give the

 3   documents to our third-party vendor and when they get them up

 4   into our ability to view it.  It sounds, from what Mr. Cohen's

 5   counsel have said, their vendor might be a little bit quicker

 6   in that request.

 7           THE COURT:  What is a little bit quicker?

 8           MR. McKAY:  I will defer to them on that.

 9           THE COURT:  How quick?  I'm wondering how quickly the

10   documents can be uploaded onto your system.

11           MR. HARRISON:  Judge, I am not the most electronically

12   savvy, which is why I brought Ms. Louks.

13           THE COURT:  Thank you.

14           MS. LOUKS:  It would depend on the volume of data.  We

15   have really fast transcript protocols, so we could, I think,

16   reasonably expect to get the data up in our system within 24 to

17   48 hours depending on the size of the files received.

18           THE COURT:  That's all of the data?

19           MS. LOUKS:  Depending upon when we receive it and,

20   again, the total volume of files.

21           MR. McKAY:  With respect to the hardcopy documents, it

22   is going to be not a large volume, gigabytes not terabytes,

23   such that their vendor or any vendor could process it.  With

24   respect to the computer hard drives, that might be a slightly

25   larger volume.  Still, as soon as we have that produced, it

1    sounds like they will be able to upload it pretty quickly.

2          With respect to the hardcopy documents, we are hopeful

3    we will have that load file ready for Mr. Cohen's counsel by

4    tomorrow such that they could be reviewing the hardcopy

5    documents tomorrow or this weekend or Monday.

6          The next category is the cell phones and iPads.  Our

7    production yesterday that I mentioned earlier was the contents

8    of four phones and one iPad.  With three exceptions I'll talk

9    about briefly, we think the remainder of the phones and iPads

10   seized, which number about a dozen, should be going out in

11   tomorrow's production to defense counsel.  I'll note that these

12   are going straight onto the hard drives.  These don't need to

13   be loaded into the electronic database because they come in a

14   sortable report.

15          The exceptions that I will mention are two BlackBerrys

16   were seized.  BlackBerrys just take longer to extract.  I'm

17   told it's about three weeks.  So those will be a little bit

18   delayed.

19          Then there is one iPhone in particular which may take

20   a little bit longer to extract than the others, I'm told up to

21   104 days.  We are working with defense counsel about a way that

22   we might be able to expedite that particular iPhone.  Generally

23   speaking on the phones, we have already got some out and we

24   expect to get the vast majority out by tomorrow.

25          Lastly, there are computers and electronic storage

1    devices.  Everything has been forensically processed at this

2    point.  What the FBI is working on now is turning those

3    forensic images into the load files that can be placed into our

4    database or Mr. Cohen's database.  That process is a little bit

5    slower and tougher to predict how long it is going to be.

6         Although I can't give you a specific guarantee about

7    when that is going to be done, I'm told that we can cautiously

8    estimate that that will be done by the end of next week such

9    that, again depending on how quickly Mr. Cohen's counsel gets

10   that uploaded into their database, they could be reviewing

11   things by the end of next week or certainly early in the

12   following week.

13        THE COURT:  Thank you very much.

14        Do defense counsel wish to speak in response to the

15   government?

16        MR. RYAN:  I wouldn't speak in response, your Honor.

17   I will just make the following representation.  This morning at

18   7:58 a.m. we received back the first hard drive, which has 100

19   gigabits of data on it.  We are in the process of uploading it.

20   In fact, I can tell you that we have a hundred gigabits of data

21   because we are already in that process.

22        Everything is working just as we represented to the

23   Court in our last visit.  We actually looked at having an

24   outside vendor do this.  We chose our own service because we

25   can make it work faster, candidly, and with confidence.

1        As we put in our papers, the first sorts that are

2   going to be done are to identify the fields of privileged

3   documents and then to hand off to The Trump Organization those

4   documents that may contain privileged information to the Trump

5   lawyer, to the president's lawyers, those things that may

6   contain that.  Our own firm will be working on other privilege

7   issues.

8        I want to remind the Court there is an inbound to Mr.

9   Cohen set of privileges.  For example, my law firm represented

10  him for almost a year before Mr. Mueller and the congressional

11  investigations.  So there are all those privileged documents

12  that are inbound to him.  I'll use my law firm as

13  representative of the four that were on page 2 of our

14  submission -- last week to you?  It becomes harder to remember

15  which day is which.  Then there is the outbound, which is Mr.

16  Cohen's work either for TO or the president or his other

17  clients.

18       So we are actually in a very good place and everything

19  is ready to roll.  There will actually be three law firms

20  simultaneously working on the documents as soon as we can do

21  that sort.  I'm hoping within three or four days they will be

22  fully equipped to have it up on their servers as well.

23       THE COURT:  Would anyone else like to be heard on this

24  point?  All right.

25       The letters that I received from counsel for Mr. Cohen

1   and the intervenors has convinced me that this process can go

2   quickly with a special master, assuming everyone works as hard

3   as you have represented you will work.  As I've said before, I

4   view a taint team to be as fair as one done by a good special

5   master.  I am agreeing with the government and counsel that a

6   special master makes sense at this point, notwithstanding that

7   I think we all know that the Southern District prosecutors have

8   integrity and decency and could do the job with utmost

9   integrity.

10         I will appoint a special master.  If at any point it

11  turns out that the special master review process is going too

12  slowly, I'll revisit the question of the scope of the special

13  master's role.  I would like the special master to have the

14  ability to be as effective as the taint team.  That would be a

15  hard standard to match, I know, because the taint team is

16  already up to speed on what is being investigated.

17         As a first matter, the special master should have

18  access to all discovery materials as well as the search warrant

19  and the application for the search warrant.  I believe that

20  counsel have identified a number of ways to go forward and have

21  correctly placed the question of privilege ahead of other

22  possible cuts through the documents.

23         It may well be that counsel will want to wait until

24  they have reviewed all of the documents on a certain matter

25  before deciding which ones to assert privilege on.  I am not

1    expecting you to go document by document and handing it up to

2    the special master.  But once you have your set, you will want

3    to identify it to the special master.  She herself would be

4    looking at the documents and considering what falls within the

5    privilege and does not so that this can move along more

6    swiftly.  She will certainly hear from those who have produced

7    documents and at some point from the government.

8            There is no need to prepare a privilege log.  I think

9    that has come to be viewed as very wasteful of time because

10   they seldom contain enough information to be useful.  I will

11   leave it to counsel and the special master to decide how to

12   inform the taint team of enough information so that they can

13   argue lack of or exceptions to privilege and work product.

14           I have considered the proposals of counsel for a

15   special master.  I have also done some checking on my own.  In

16   my view, the person best qualified to be special master in this

17   case is Barbara Jones, who is with the Bracewell firm.  I have

18   spoken with her about how much of her time she could devote to

19   this.  She has committed 90 percent of her time to it and

20   perhaps more if needed.  She has also committed a similar but

21   not quite as much amount of time of one of the senior partners

22   at her firm.

23           I should tell you a few things about Barbara Jones in

24   case you don't know them.  She spent nearly 17 years on the

25   bench of this court.  She dealt with many cases, many important

1   cases, and issues of privilege over those years.  She also was

2   in the U.S. Attorney's office and in the district attorney's

3   office when she was younger.  She has been in private practice

4   for about five years.  So she has all of the different points

5   of view you would want to bring to these documents.

6           She is available early next week to meet with counsel.

7   I have copies of her résumé; my law clerk has them.  Also, of

8   course, her law firm has a website.  You will have her

9   telephone number.  You will want to talk with the government to

10  decide whether you want to meet with her together or

11  separately.  You can certainly do either.

12          I should note that I reserve the right to speak at any

13  time to the special master.  I'll be checking in with her at

14  least once a week to see how quickly the review is going.

15  After about four weeks, I'll be concerned if it's not on

16  schedule.  On schedule means that you are giving the special

17  master's team enough to keep it occupied full time.

18          I would like to say a word about contract lawyers and

19  associates.  I think the general learning that we all have

20  gotten from these cases is that everything moves more

21  efficiently the smaller the team you have and the more senior

22  the team you have.  To have contract lawyers looking at a

23  document is probably not at all efficient.  I'm sure you will

24  each want to do what is most efficient.

25          Did you wish to be heard?

1          MR. RYAN:  We are not intending to use contract

2     lawyers.  It will only be full-time McDermott lawyers.  I can

3     assure you that I am picking the smart ones to do this.

4          THE COURT:  Oh, I'm going to have to seal that part of

5     the transcript from your law firm.  Okay: smart ones.  One

6     counsel whose name I won't mention mentioned contract lawyers,

7     and I said that for that person's benefit.

8          The special master will be reviewing documents for

9     both responsiveness and privilege.

10          With respect to paying for the special master, I won't

11     make any decision yet.  I'll ask you to discuss this among

12     yourselves and discuss with the special master what she

13     proposes to be paid.  It is my impression that she does not

14     propose to be paid any more than the magistrate judges on the

15     list given by the government, which I assume is a lower rate

16     than most lawyers in private practice.

17          Are there any questions?  Yes?

18          MS. HENDON:  Thank you, your Honor.

19          THE COURT:  Yes, Ms. Hendon.

20          MS. HENDON:  I just want to make sure I understand

21     your Honor's ruling.  Is it your Honor's decision that the

22     seized materials will flow from the government to Mr. Cohen's

23     counsel in the first instance; Mr. Cohen's counsel, in

24     consultation with privilege holders, will make cuts as to

25     privilege holders' documents; those buckets of documents

1   assigned to each privilege holder will then move to counsel for

2   that privilege holder?

3              THE COURT:  I have not decided that for sure because

4   that was simply proposed by Mr. Cohen's counsel.  It appeared

5   to be accepted by the intervenors, The Trump Organization, and

6   the lawyer for President Trump, but I'm not sure.

7              MS. HENDON:  I can represent on behalf of Ms. Resnick

8   for The Trump Organization, who is looking at me and nodding,

9   and on behalf of my client that what I have just described is

10  acceptable.  May I continue with what I understand your Honor's

11  process to be?

12             THE COURT:  Certainly.

13             MR. McKAY:  Your Honor, if you prefer, I would like to

14  be heard on that particular process point.  I am happy to wait

15  until Ms. Hendon has raised all the process points or respond

16  to that specific point, whichever the Court prefers.

17             THE COURT:  Ms. Hendon, do you want to be heard first?

18             MS. HENDON:  I would like to lay out what my under-

19  standing is.  Then your Honor can correct me if it's wrong and

20  any of the other lawyers in the well may have their own

21  questions or comments.

22             Once the privilege holders have their set of documents

23  from Mr. Cohen's counsel, we will then review them and make

24  privilege designations.  While what I just described is taking

25  place, a set of seized materials, as your Honor put it,

1   discovery materials, the search warrant, and other items will

2   go to the special master.  She and her team will review that

3   material as they wish, however they choose to get going.  The

4   idea would be they are looking for and making privilege calls

5   with input from the privilege holders' lawyers.

6           Simultaneously, the privilege holders are reviewing

7   this material and the special master and her team are reviewing

8   the material.  Am I right so far?

9           THE COURT:  That's right.

10          MS. HENDON:  Thank you, your Honor.  Next, the taint

11  team of the United States Attorney's office, it is my under-

12  standing that they would not be performing a simultaneous

13  review of the seized materials.  Is that correct?

14          THE COURT:  That's my understanding.

15          MS. HENDON:  Thank you, your Honor.  Finally, once the

16  intervenors have identified pieces of data or pieces of paper

17  over which we would claim privilege on behalf of our respective

18  clients, we are not going to spend time making privilege logs

19  for Judge Jones.  We are going to turn over or somehow, in

20  agreement with her, designate exactly the set of materials that

21  we respectively would claim privilege over.

22          THE COURT:  Yes.  Did the government associate a

23  particular number with each page or each device?

24          MR. McKAY:  Yes, there should be control numbers on

25  the documents.

14

```
 1          THE COURT:  So you wouldn't have to send her

 2   documents.  You could send her the numbers.

 3          MS. HENDON:  That's very helpful.  I understand your

 4   Honor's ruling.

 5          I don't think your Honor has spoken to the manner in

 6   which disputes would be raised and challenges would be made.  I

 7   am not asking your Honor to do that because it seems to me it

 8   may be your Honor's intention that the intervenors, the

 9   government, and the special master work that out.  But I might

10   be wrong about that.

11          THE COURT:  If you work everything out, you won't need

12   to talk to me.

13          MS. HENDON:  Thank you, your Honor.  Thank you, Mr.

14   McKay.

15          THE COURT:  I probably should deal with a housekeeping

16   matter first.  There is a motion to intervene.

17          MR. AVENATTI:  Yes, your Honor.

18          THE COURT:  I grant that motion.

19          MR. McKAY:  Judge, can we be heard on that?

20          THE COURT:  Yes.

21          MR. McKAY:  We saw the motion before coming over to

22   court this morning.  We read it briefly.  We ask the Court

23   before you decide it that we have the opportunity to put in

24   written submissions.

25          I think it is important to keep in mind that this is a
```

1    litigation related specifically to the searches that were

2    conducted of Mr. Cohen's premises and devices.  Mr. Cohen and

3    Ms. Clifford were never in an attorney-client privilege

4    relationship; there is no allegation that there was.  The

5    suggestion that Ms. Clifford's counsel may have shared

6    something with Mr. Cohen such that Mr. Cohen has privileged

7    materials is something that we have really no evidence of.

8              THE COURT:  Would they be privileged?

9              MR. McKAY:  I think if they were shared against Ms.

10   Clifford's wishes, they might be.

11             THE COURT:  Might be privileged?  It's her privilege.

12             MR. McKAY:  If a privileged document between Ms.

13   Clifford and Mr. Davidson were shared with Mr. Cohen against --

14             THE COURT:  It would lose its privilege.

15             MR. McKAY:  If it were against Ms. Clifford's wishes

16   without her authority, it might be.

17             THE COURT:  I see.

18             MR. McKAY:  It is not important to get to the bottom

19   of that today because at this point we have no concrete

20   information that that in fact happened.  So I'm not asking the

21   Court to deny the motion today.  I'm just asking that we have

22   the opportunity to review Mr. Avenatti's brief and submit any

23   objections.

24             Based on our understanding, this litigation is about

25   these discrete searches of Mr. Cohen's property and not any

1   matter in any way touching on matters relating to Michael Cohen

2   or Ms. Clifford.  I'm not sure that this motion is properly

3   made in this case, so we may object.  We would like the

4   opportunity to brief that, your Honor.

5           THE COURT:  I will give you that opportunity.  My

6   concern would be that if, for example, any of Ms. Clifford's

7   documents were given to Mr. Cohen without her having agreed to

8   it -- is that, Mr. Avenatti, your main concern or is it

9   something else?

10          MR. AVENATTI:  Your Honor, we have a number of

11  concerns, but that is our primary concern, you are correct.

12  I'm happy to illuminate the other concerns that we have.

13          THE COURT:  Thank you.

14          MR. AVENATTI:  Our concerns, your Honor, are as

15  follows.  We have substantial reason to believe based on my

16  communications directly with Mr. Davidson that there was an

17  improper or a series of improper communications of attorney-

18  client privileged information belonging to my client to Mr.

19  Cohen both during the negotiation period of this NDA as well as

20  thereafter.  That is number one.  That is a very serious issue

21  for us, as you might imagine.

22          Secondly, we have reason to believe that Mr. Davidson

23  continued to communicate with Mr. Cohen about my client and

24  about the NDA as recently as days prior to the FBI raids.

25  Those communications had continued without my client's consent.

1    Of course, those communications, whether they be by email, text

2    messages, or otherwise, would technically belong to my client

3    because it would be part of her attorney-client file.  That is

4    a second concern that we have.

5         The third concern that we have, your Honor, is that

6    many of these documents and communications may fall under the

7    settlement privilege that would have existed relating to the

8    negotiation of the NDA in the settlement of the disputes or

9    potential settlement of the disputes.

10        Those are our three primary issues, your Honor.  We

11   filed a motion for intervention.  The Court dispensed with the

12   other motions for intervention fairly quickly.  We are not

13   looking for any adjudication by your Honor, by this Court, as

14   to any of those issues.  We just effectively, your Honor, want

15   a seat at the table.

16        THE COURT:  I have difficulty understanding any flaw

17   in Mr. Avenatti's position.  He is not asking for me to state

18   that any of what he surmises or believes is true.  He just

19   wants to be able to have a seat at the table to look at

20   anything relating to his client.

21        MR. McKAY:  Your Honor, we are simply asking for the

22   opportunity to consider his motion and file a responsive brief

23   if we think it is appropriate.  Unlike in the context of the

24   other intervenors, where there was a really strong reason to

25   think that Mr. Cohen in fact has a privileged relationship with

18

1    this person, we are not so sure that that is the case with

2    respect to Ms. Clifford.

3           We are happy to speak to Mr. Avenatti to consider the

4    law in this matter.  I just would like the opportunity to

5    respond and not get sidetracked over the issue that we are

6    focused on today, which is the procedures for the special

7    master.

8           THE COURT:  All right.  I will hold off ruling on Mr.

9    Avenatti's motion to intervene on the condition that the

10   government allow Mr. Avenatti to ask the government questions

11   and attempt in good faith to resolve whatever needs to be

12   resolved.

13          MR. AVENATTI:  Thank you, your Honor.

14          THE COURT:  I will hear a motion for intervention

15   later on.

16          MR. AVENATTI:  We are not maintaining that at any time

17   my client had an attorney-client relationship with Mr. Cohen,

18   just so we are clear.  Thank you.

19          THE COURT:  Thank you.

20          MR. McKAY:  If I may go back to procedures, your

21   Honor?

22          THE COURT:  Yes.

23          MR. McKAY:  To respond to Ms. Hendon's point, in one

24   respect we are on the same or close to on the same page, which

25   is who makes the initial cut of what is potentially privileged.

1    I understood the Court to be agreeing that we produce the

2    materials both to Mr. Cohen's counsel as we already are and

3    also to the special master so there can be work done in

4    parallel.  We can discuss with the special master next week the

5    specific procedure that she intends to follow.

6         Our view is that it should not be the case that we

7    have to wait for Mr. Cohen to parcel out some materials to each

8    of the intervenors, the intervenors then to make their

9    privilege determinations, and all the while the special master

10   is doing nothing but waiting for a list of documents from

11   counsel.  I think the special master should, if she is so

12   inclined, follow a procedure like what we proposed in our

13   compromise position this morning.

14        THE COURT:  That is precisely what I discussed with

15   her.

16        MR. McKAY:  Excellent.

17        THE COURT:  She will be working all the time looking

18   at everything so that she will be best positioned to make the

19   important decisions that need to be made here.

20        MR. McKAY:  Your Honor, perhaps this is something that

21   you intend to defer to the special master to decide.  Our

22   request would be that whatever the particular process be,

23   counsel for Mr. Cohen and the intervenors be given their

24   specific time frame in which to make any identification of

25   privileged materials.  I don't know whether the Court intends

1    to set that or defer to the special master on that point.

2          THE COURT:  Initially, I would defer to the special

3    master.  That has been very much on my mind.  Perhaps each of

4    you could tell me what you would like to have done first.

5          MR. McKAY:  Our proposal, and I understand you are not

6    going with the specific proposal that we had put forth, was

7    that the special master that we had described would use a

8    technology assisted review platform which could get an initial

9    cut of potentially privileged documents within two weeks.

10          THE COURT:  Right.

11          MR. McKAY:  Our proposal was going to be that during

12    those two weeks counsel for Mr. Cohen and the intervenors be

13    working in parallel to make their own determination and that

14    they be given some discrete amount of time after the special

15    master has made her first cut, perhaps two weeks more, in order

16    to add any additional identification.

17          THE COURT:  Yes.  I wanted to note that Judge Jones

18    has used the TAR process and they have other processes they use

19    and special rooms, special machines devoted to a particular

20    case.  I think she will be technologically well suited to the

21    job.

22          MR. McKAY:  That addresses that concern, your Honor.

23          The next one was I understood the Court to say that

24    you do not believe a privilege log is necessary.  We definitely

25    agree with that.

1           I also understood you to say that you were deferring

2    to the special master exactly how much information would be

3    provided to the filter team in order for them to lodge any

4    objections to designations of privilege.  To make sure our

5    position is clear, whether the Court is deciding this or not,

6    we think it is very important that the filter team be given

7    access to the actual document that is designated as potentially

8    privileged so that a filter team member can make an informed

9    judgment about whether to object to the designation as

10   privileged or not.  That is not only to protect the law

11   enforcement interests at stake, but it is also in the interests

12   of efficiency.

13          Take, for example, a privilege log with a list of

14   documents.  If the filter team or the government generally is

15   in the dark, doesn't have enough information about what that

16   document is, it is going to be very difficult for the govern-

17   ment to do anything other than make overbroad objections to

18   preserve their rights.  If, by contrast, the filter team can

19   see the document and say, yes, that is obviously privileged, no

20   need to dispute that, I think the special master is likely to

21   be adjudicating a far narrower set of disputes over privilege.

22          Because of the Court's comments about the integrity of

23   the Southern District and the filter team and because of the

24   case law in this area, we think that sharing that subset of

25   potentially privileged documents with the filter team for the

1    sole purpose of lodging any objections adequately and fully

2    respects privilege while still balancing countervailing

3    interests.  I just wanted to make sure we were heard on that

4    point.

5              THE COURT:  All right.  I would like to hear all

6    counsel on that point.

7              MS. HENDON:  Your Honor --

8              MR. RYAN:  I think it is my turn.  If I may.  Is that

9    all right with your Honor?

10             THE COURT:  I was waiting to see who was going to win

11   this.

12             MS. HENDON:  As a privilege holder, I would like to

13   begin.

14             THE COURT:  Please go ahead.

15             MS. HENDON:  As the privilege holder, I appreciate

16   your courtesy, Mr. Ryan.

17             On the first point concerning the simultaneous review

18   of the materials, which I think we all fully understand, I want

19   to make sure everyone in the well and that your Honor is clear

20   in understanding that there will be some lag time between when

21   the special master and her team are able to access the searched

22   materials and begin, whether they use TAR or another protocol,

23   making privilege determinations and a time in which the

24   intervenors can.

25             THE COURT:  I'm not clear on what you are saying.

1          MS. HENDON:  For a very simple reason.  We are not

2     permitted and it wouldn't be proper for us, counsel for Mr.

3     Trump, to just start looking at the full panoply of seized

4     materials.  Those materials pertain to people other than Mr.

5     Trump.  We would never suggest we have access to it.  It is

6     just a function of the procedure and the situation we are here

7     in that the intervenors and the privilege holders do have to

8     wait to get the material from Mr. Cohen's team.

9          I don't anticipate any issue with that or any concern

10    about that, but I hear in the government's written proposal

11    they made to your Honor and in Mr. McKay's remarks a notion

12    that the special master, in effect, is going to make the

13    initial determinations and we will be given, as privilege

14    holders, some discrete amount of time thereafter to get up to

15    speed.  I just think there is a troubling ring to that.

16          We have heard many times in the court --

17          THE COURT:  I have gotten a note that you need to use

18    the microphone.

19          MS. HENDON:  Thank you.  There is a troubling ring to

20    that, your Honor.  We are bound by the fact that we are just

21    not able to jump into the material the way the special master

22    can.

23          THE COURT:  Let me ask Mr. Cohen's lawyers, anyone who

24    wishes to speak to this, how quickly do you think you can

25    identify documents that would be privileged for President

Iarscope

1    Trump?

2         MS. HENDON:  It is actually not privileged documents,

3    your Honor.  It would be Mr. Trump's, if you will,

4    representation files which we get and then we then review for

5    privilege.

6         THE COURT:  I see.  With that amendment.

7         MR. RYAN:  First of all, it's been a little bit since

8    I have been able to get up.  I wanted to say that I think the

9    choice of Barbara Jones as special master is a wonderful

10   choice, a fine choice, and we embrace that.  We embrace the

11   Court's order.

12        What I do not embrace is the chiseling that's going on

13   now in a sense to try and change the outcome of the Court's

14   order, which I thought was very clear.  The issue that is the

15   core issue here is the wholesale transfer of privileged docu-

16   ments to the taint team.  I believe that the special master

17   should be left with the authority to determine when and if the

18   taint team is allowed to see the privileged documents.

19        But there should be no presumption, absolutely no

20   presumption, that a hundred percent of the documents that we

21   believe are privileged should be given to the taint team for

22   their review.  So criminal investigators employed by the

23   Department of Justice and assistant U.S. attorneys employed by

24   the Department of Justice get it, because that is inconsistent

25   with the 400-year-old privilege.  It is inconsistent with it in

that sense.

I think the master can make that decision.  If she makes the decision that 100 percent are going to be given over, I might ask to be heard by you again.  If she selects whatever percentage she thinks they ought to be able to see, I think that is her call.  I think this is an issue best left to her to at least in the first instance hear from us to gauge the way that we are going about this.  Let me stop at that point.

There is one other issue I want to talk about.

We are standing here today, I think I was last here on April 16th, and this morning I got the first drive back.  I have the first data.  I ask that the Court not put it on a deadline today -- we have a hearing on the 24th here -- unless Court is going to vacate that in light of the activity.  We have a deadline on us that I have always in my mind been working to.  The government has said that by the 13th they think they will give us everything.

I don't know how hard this task is or how easy.  I actually think we know a great deal about how to get this moving very quickly.  And I know that I can't rise before you and come back with a report that is inadequate.  But today is not the day to set that deadline, and the Court has us before you in less than the ten business days I proposed when I was last here in order to come back and report.

I think that is more than adequate.  And the special

1   master will be getting direct communications from us and

2   speaking to the Court on a weekly basis. You can always bring

3   us back here earlier if you choose, but I think we have a

4   schedule that works and we have a process that the Court has

5   ordered that works. I think what we ought to do is leave that

6   process alone now and let it work.

7           THE COURT: I would like to ask Mr. McKay, how is what

8   you are now proposing different from giving all documents to

9   the taint team right away if you are going to see what counsel

10  view as the privileged documents eventually?

11          MR. McKAY: Here we are not doing the initial

12  selection of what is privileged and not privileged. I think

13  the primary concern that was expressed with respect to the

14  taint team doing the initial review is that the taint team may

15  in fact take an underinclusive approach or not be fully

16  apprised of the facts necessary to make adequate privilege

17  calls. That concern is fully addressed by having the initial

18  review be made by the special master with the supplementation

19  of counsel for Mr. Cohen and the intervenors. They are able to

20  designate to the special master all of the things that they

21  claim to be privileged.

22          I think, however, it is very important to provide the

23  actual documents to the taint team for reasons we have already

24  discussed at length. They need to be informed to make their

25  objections. We have talked about concerns of overbreadth in

1    the designation of privileged materials.

2          Mr. Cohen's proposal, is not exactly what the Court is

3    adopting, but one of the things that struck me about Mr.

4    Cohen's proposal was that he would create a privilege log, and

5    the government would then object based on the privilege log.

6    The special master would only look at a document if the

7    government objected.  That creates the poor incentives that I

8    described earlier for Mr. Cohen to overdesignate, for the

9    government to overobject, for us to litigate everything.

10          The filter team takes its job very seriously and can

11   be relied upon to make informed and reasonable objections if

12   they can see the documents.  But if all they have is a

13   privilege log or a list of documents, it is very difficult for

14   us to evaluate whether or not there is a valid claim of

15   privilege here.

16          THE COURT:  I fully accept what you say.  If I were in

17   your shoes, I would definitely want to see --

18          MR. McKAY:  I don't want to send your the filter

19   team's --

20          THE COURT:  No, no.  If I were in someone else's

21   shoes, I would want to do that.  It may come down to that, but

22   I would rather not decide that right now.  I think it is

23   possible that Barbara Jones may come up with a compromise that

24   works for everyone.  If she doesn't, I'd be glad to hear you

25   again on the taint team.

 1            MR. McKAY:  Thank you, your Honor.

 2            MS. HENDON:  Thank you, your Honor.  I just wanted to

 3       correct something that Mr. McKay said that actually is

 4       important for the proceedings.  The president's objection to

 5       the taint team was not primarily an objection on the basis that

 6       they would not be fair.  The president's objection was to any

 7       third party, including the special master, seeing his

 8       privileged material before he made designations.

 9            Your Honor has made ruling with respect to the special

10       master that we have all discussed and heard today.  From my

11       client's standpoint, we are already in a compromised position

12       just from the perspective of the privilege holder.  The notion

13       that we will then give our privileged documents in this setting

14       over to the taint team would be something to which we would

15       take strong objection.  I'm glad to hear your Honor not ruling

16       on that today.

17            THE COURT:  Right, I'm not ruling on it.

18            MS. HENDON:  Thank you.

19            THE COURT:  Yes, Mr. McKay?

20            MR. McKAY:  Two quick points, your Honor.  Both Ms.

21       Hendon and Mr. Ryan talked about deadlines and their concerns

22       about imposing specific deadlines today.  To be clear, I am not

23       proposing that you set a specific deadline today.  Our

24       discussions with Judge Jones about the procedures to be

25       followed out will inform any judgment about deadlines.  Our

1    point was that we will ask Judge Jones and we hope you will

2    communicate to her that we think it is important to have

3    realistic and concrete deadlines, whatever those deadlines may

4    be.  We can work those out with Judge Jones.

5            THE COURT:  Good.

6            MR. McKAY:  The second point I want to make was with

7    respect to privileged documents versus nonprivileged and

8    responsiveness review, I understand the Court's ruling.  To be

9    clear, I'm not trying to chisel.  I'm just trying to clarify so

10   we are on the same page and the special master has her marching

11   orders.

12           The special master's review is for privilege.  A

13   responsiveness review, which in any other case would be done by

14   the government's investigative team in the first instance, will

15   still be task of the government such that once the potentially

16   privileged materials are identified by the special master and

17   indicated by counsel for Mr. Cohen, the intervenor, the

18   nonprivileged materials, the materials over which there is no

19   claim of privilege by any interested party, will be promptly

20   released to the government so that the investigative team can

21   begin its work.

22           THE COURT:  The responsive documents that are not

23   privileged should be released to the taint team, government, as

24   soon as that has been adjudicated.  But I want to note one

25   thing that I know is very minor but might be on the mind of Mr.

1    Cohen or anyone whose files have been taken.

2         Suppose there is a medical file on his wife or child.

3    That clearly is, I think, nonresponsive.  You would probably

4    agree that if Judge Jones described that to you, you would say

5    we don't need to see that.

6         MR. McKAY:  Your Honor, yes and no.  Assume there were

7    a case in which there were no attorney-client privilege, there

8    was a seizure of electronic evidence.  In every one of those

9    cases, just by the nature of the search of electronic evidence,

10   there will be nonresponsive material, often personal material.

11   That is exactly why rule 41 has the procedures it does for the

12   government to make a review of responsive material and to

13   extract or delete or get rid of the nonresponsive material.

14        There is no reason to expand the scope of the special

15   master's purview to that field.  The concerns expressed in Mr.

16   Cohen's motion and the intervenor's motion have always been

17   uniquely focused on the attorney-client privilege.  In this

18   case, like any other, we will do a very careful review of the

19   nonprivileged material for things that are responsive to the

20   warrant.  Something like a medical file or particularly

21   personal things like that is clearly going to be nonresponsive,

22   and we are going to remove it from our selection of the

23   responsive material like we would in any other case.

24        THE COURT:  Let's not decide this particular point

25   right now.  If this issue comes up, you can raise it with the

special master.  You can talk about what kind of documents are

there.  If you really want to see a child's operation

document --

          MR. McKAY:  Your Honor, I want to be very clear about

that.  It is not that we really want to see a child's medical

file.  It is that the procedure set forth in the rules, in the

search warrant, is for the government to do the responsiveness

review in the first instance.  Having a special master get into

a responsiveness review is completely divorced from the relief

that counsel are seeking here.

          Among other reasons, we talked about the ability to

make a responsiveness review.  Of course, if there are --

          THE COURT:  I think I can shortcut this.  What I have

in mind is if Judge Jones sees a document about a child's ankle

breaking, that is so clearly not responsive that you wouldn't

want it.  She can tell you that she is keeping it and generally

what it is, but you wouldn't have the details.  She won't be

making decisions that are closer to responsive than that.

          MR. McKAY:  Your Honor, with that clarification, we

don't have a problem with that.  My concern would just be

slippage from that, that Judge Jones's role would expand from

mere privilege review to responsiveness review as well.

          So yes, we would agree that if there is something

particularly irrelevant and particularly sensitive and she sees

it, she can just note to the government, look, this isn't

1   privileged but you might mark this as such just because it is

2   so clearly nonresponsive.

3        But I strongly would like to push back on the

4   suggestion that she should be making any sort of responsiveness

5   review as a general matter because that is not the relief that

6   is necessitated by the concerns that the movants made and,

7   frankly, we don't think there is any precedent for that.

8        THE COURT:  Perhaps the best way to word this is the

9   special master would have the authority to designate certain

10  documents as completely unresponsive and describe them to the

11  government in the presence of other counsel and decide whether

12  you think you need to see it.  She won't be deciding whether a

13  particular phonecall among those who were operating during this

14  time, she won't be deciding whether those are responsive or

15  not.

16       MR. McKAY:  Understood.  Thank you, your Honor.

17       THE COURT:  Yes, Mr. Ryan?

18       MR. RYAN:  I just want to be briefly heard.  Mr. Cohen

19  has two children, one 18, one 22.  I've met with members of the

20  family.  We do believe that we ought to be able to do exactly

21  what I heard the Court say a second ago.  For example, if there

22  is a file that has family photos, I ought to be able to tell

23  Judge Jones that this range is that, and she can confirm it and

24  then let the government know.

25       THE COURT:  You would show her the documents?

33

1           MR. RYAN:  I would give her the range, and she could

2    review it herself and ascertain that I am making a

3    representation that it is entirely correct.

4           I think what the government is saying is they got all

5    the stuff that is not in the warrant and they still want to

6    look at it.  In other words --

7           THE COURT:  I don't think so.

8           MR. RYAN:  We will raise issues if they come up on

9    this issue.  I hear the Court's order for today that I have at

10   least some bandwidth to protect the privacy of this family.

11   Thank you.

12          MR. McKAY:  Your Honor, I'm sorry to belabor the

13   point.  As Mr. Ryan is well aware, because I have expressed

14   this to his partner in previous conversations, we have no

15   intent to review the intensely personal things that may be

16   stored on a family member's phone or even on Mr. Cohen's phone.

17   But what he just suggested was now that he is going to

18   affirmatively be making quasi-responsiveness calls by

19   designating things to Judge Jones.  We think that is mission

20   creep.

21          THE COURT:  I wasn't quite clear on what he had in

22   mind, but I thought when I responded to him I made clear what

23   the situation will be, which is that all documents need to be

24   shown to Judge Jones.  She will have a full set as soon as the

25   government gives her that set, but she won't be divulging

1    anything private and personal without the okay of other

2    counsel.

3            MR. McKAY:  Your Honor, the problem with that proposal

4    is that, let's say, for example, Judge Jones is using a

5    technology-assisted review platform or any platform that

6    requires a key word search.  The types of key words that she

7    can and should be using are things that relate to the concern

8    about privilege: names of clients, names of attorneys, key

9    words designed to ferret out privilege.  I don't think anyone

10   contemplates that in the many, many thousands or millions of

11   files that Judge Jones will have, she is going to go one by one

12   and find them all.  There is going to be some sort of

13   mechanical sorting.

14           As long as the mechanical sorting that she is doing is

15   focused on the task for which she is being appointed, which is

16   to say a privilege review, if in the course of that she happens

17   upon a medical file that is not privileged but very clearly not

18   responsive, and she wants to say to Mr. Cohen's counsel and to

19   the government, look, document with Bates number 324 is really

20   clearly not responsive and personal, government, can I mark it

21   as such, that is fine with us.

22           What we would object to would be Judge Jones's purview

23   being expanded so that not only is she now trying to find

24   privileged documents but she is using key words that are

25   looking to find personal documents or nonresponsive documents.

1          I envision this more as sort of a plain view type

2     exception.  If Judge Jones in the process sees something in her

3     review that is very clearly nonresponsive, it is one thing for

4     her to indicate that.  But for her to have a separate task --

5          To be clear, the task of looking for nonresponsive

6     documents is very, very different from the task of looking for

7     privileged documents.  It is going to require a whole new sort

8     of briefing in terms of the nature of the government's

9     investigation and what may or may not be responsive about Mr.

10    Cohen's personal relationships and what may be out of bounds.

11    It is going to require new key word searches, new search terms.

12    It is dramatically expanding the scope of what she is trying to

13    do.  If you are asking defense counsel or Mr. Cohen's counsel

14    to make a log of identification of nonresponsive materials, you

15    are dramatically expanding the scope of what they want to do.

16          As long as what your Honor is proposing is sort of a

17    plain view type thing, if Judge Jones sees something very

18    clearly nonresponsive and wants to tell the parties as such,

19    that's fine.  But I don't think it should be that she now has

20    two different tasks on her hands, privilege review and

21    responsiveness review.

22          THE COURT:  Would anyone like to be heard further?

23          MR. RYAN:  All I'd say, your Honor, is I may help

24    Judge Jones and give her a list of things that I think are

25    personal to the family when I find them.  If she finds that

1    useful, she will tell me to continue it.  If she doesn't find

2    it useful, I won't.

3        THE COURT:  I assume that anything you say to the

4    special master can be communicated to me and to the government.

5        MR. RYAN:  Yes.  In fact, I don't have any problem

6    that they know the range that I'm saying contain personal

7    information about the family.  The problem is really that the

8    special master in the first instance will have to gain

9    confidence that we are using that correctly because she will

10   have access to it.

11       MR. McKAY:  Your Honor, to the suggestion that he is

12   going to identify a range of personal material, what we have

13   set forth in our briefs is our view that given the extremely

14   limited number of clients that Mr. Cohen has and given the

15   recent representation by some of those clients about the

16   limited nature of Mr. Cohen's representation of them, the task

17   of reviewing for privilege may not be that voluminous.  There

18   may not be that many privileged materials.  We'll see.  The

19   special master is going to find out.

20       But when you do an electronic search of a cell phone,

21   you're going to get an enormous amount of personal data.  That

22   is a regrettable side effect of the way electronic searches

23   necessarily are carried out.  It is usually the case that if we

24   get a cell phone, a very small fraction of that ends up being

25   responsive and a large amount of that is personal.  That's why

1    there are procedures in place to separate out the nonresponsive

2    material.

3            If Mr. Cohen's counsel are distracted from the task at

4    hand, which is identifying privileged material, so they can

5    also create a log or range of things that they think are

6    improperly personal, you are dramatically delaying this

7    process, expanding the burden on the special master, and really

8    slowing this investigation down in a way that we think is not

9    only damaging to the law enforcement interests at stake but

10   also is not related to the interests at stake.

11           I say again if he were not an attorney, if there were

12   no reason to ever think there were attorney-client privileged

13   materials on this phone, we wouldn't be here talking about

14   special masters.  The concern is one of attorney-client

15   privilege.  If this were any other case and we had conducted an

16   electronic search, the government in the first instance would

17   do the responsiveness review in the sensitive manner that we do

18   to ensure that personal materials aren't seized.

19           But the task of identifying and deleting nonresponsive

20   material is far greater.  It is a far more burdensome task for

21   Mr. Cohen's counsel and for the special master than the

22   privilege task is likely to be.  So I think this is a very

23   serious expansion of the scope of what has been at stake here.

24           As long as it is just Judge Jones has the discretion

25   in her review to identify things that she sees, that's one

1   thing.  But asking Mr. Cohen's counsel to identify personal

2   material in the beginning as an initial matter really will

3   dramatically slow down this process.

4          THE COURT:  What I have in mind is that counsel will

5   all focus first on the privilege issue.  That is what brought

6   us all here.  Please do that.

7          MR. HARRISON:  Yes, your Honor.

8          MR. RYAN:  Yes, ma'am.

9          THE COURT:  If anything in the process is worrisome to

10  the government, of course you will raise it with the special

11  master.  If you don't get the answer you want there, you can

12  raise it with me.

13         Anything else?

14         MS. RESNICK:  Good afternoon, your Honor.  On behalf

15  of The Trump Organization, our position is we are not taking a

16  position.  We have a seat at the table as a privilege holder.

17  We will devote the resources and the staffing that was

18  indicated in our letter of April 24th and Mr. Futerfas filed,

19  and we accept whatever process this Court adopts for the review

20  of the privileged documents.

21         THE COURT:  Thank you.  Mr. Avenatti.

22         MR. AVENATTI:  Thank you, your Honor.  One house-

23  keeping matter and one other issue I want to raise.  If we

24  could have some deadlines associated with our motion to

25  intervene, deadline for an opposition or a position from the

1  government, we would like that decided sooner rather than

2  later.

3          THE COURT:  Mr. McKay, do you have a proposed date for

4  a motion?

5          MR. AVENATTI:  I'm hopeful we are going to work this

6  out, your Honor.

7          MR. HARRISON:  Judge, I haven't had a chance to read

8  the papers yet from Mr. Avenatti.  I don't know that we will

9  have a position or be involved at all.  I would just reserve

10  the right to read them and file a response if necessary.

11          MR. McKAY:  As Mr. Avenatti said, we are happy to

12  speak with him and try to work this out.  What we would ask for

13  is the opportunity to do so today and/or tomorrow and file any

14  opposition by the end of the day on Monday.

15          THE COURT:  Certainly, that's fine.

16          MR. AVENATTI:  The second issue I want to raise is I

17  listened to what Mr. McKay said earlier, and once I sat down I

18  wanted to raise this with the Court because I don't want there

19  to be any surprises.  While technically we may be here today on

20  warrants that were executed on the residence, the hotel room,

21  and the office for Mr. Cohen, as our papers delineate, there

22  are additional issues relating to documents that were either

23  seized or voluntarily turned over by Mr. Davidson, my client's

24  former counsel.

25          We would like any issues relating to these documents,

1    whether they are privilege or otherwise, resolved in this court

2    because we think it is the appropriate forum to do so.  In the

3    event we have to file another in re action, if the government

4    is going to actually put us through our paces to do that, we

5    will do that here in this court and have that deemed related

6    perhaps to this matter.  But it would be our hope, your Honor,

7    that all of these issues could be dealt with in this court.

8         We have a significant concern, as you might imagine,

9    relating to documents that were either seized or turned over by

10   Mr. Davidson relating to privilege and the like, including text

11   message exchanges.  We have asked Mr. Davidson for all of the

12   text messages exchanged, for instance, with Mr. Cohen.  He

13   claims he no longer has them, that the government has them.  We

14   know that such text messages exist, which is one of the reasons

15   why we want to intervene, so that we can protect my client's

16   rights and get those documents.

17        I wanted to raise that issue for the Court.  I'm not

18   looking for anything to be decided today, but I did want to

19   highlight the issue.  Thank you.

20        THE COURT:  Anyone else?  If there is nothing further,

21   we are adjourned.  We are keeping the May date.  Thank you.

22        (Adjourned)

23

24

25