**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In the Matter of Search Warrants Executed on April 9, 2018* | |
| MICHAEL D. COHEN, | 18-MJ-3161 (KMW) |
| Plaintiff, | **RESPONSE TO PLAINTIFF MICHAEL D. COHEN'S OBJECTION TO *PRO HAC VICE* ADMISSION OF MICHAEL J. AVENATTI** |
| - against – | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

On May 9th, Michael Cohen ("Mr. Cohen"), through his attorneys, filed an opposition to the *pro hac vice* admission of Michael J. Avenatti, attorney for proposed intervenor Stephanie Clifford ("Ms. Clifford").  On May 11th, this Court ordered that "[i]f Michael Avenatti wishes to be heard at the May 24th, 2018 conference in this matter, as counsel for Stephanie Clifford, he must move for admission *pro hac vice* by May 17th, 2018."  [Dkt No. 42.]

Pursuant to the Court's order, Mr. Avenatti filed his application for *pro hac vice* admission earlier today.  Mr. Avenatti now files this Memorandum to explain why Mr. Cohen's arguments opposing admission to appear in this Court on behalf of Ms. Clifford are without merit and should be rejected.

As the Court is aware, *pro hac vice* admissions are governed by Local Civil Rule 1.3(c) (made applicable to this action by Local Criminal Rule 1.1(b)).  Rule 1.3(c) states, in relevant part:

> (c) A member in good standing of the bar of any state or of any United States District Court may be permitted to argue or try a particular case in whole or in part as counsel or advocate, upon motion (which may be made by the applicant) and (1) upon filing with the Clerk of the District Court a certificate of the court for

> each of the states in which the applicant is a member of the bar,
> which has been issued within thirty (30) days of filing and states
> that the applicant is a member in good standing of the bar of that
> state court, and an affidavit by the applicant stating (a) whether the
> applicant has ever been convicted of a felony, (b) whether the
> applicant has ever been censured, suspended, disbarred or denied
> admission or readmission by any court, (c) whether there are any
> disciplinary proceedings presently against the applicant and (d) the
> facts and circumstances surrounding any affirmative responses to
> (a) through (c); and (2) upon paying the required fee. . . . Only an
> attorney who has been so admitted or who is a member of the bar
> of this Court may enter appearances for parties, sign stipulations or
> receive payments upon judgments, decrees or orders.

"The decision to admit an attorney to practice *pro hac vice* rests with the discretion of the Court."

Mohamed v. Rajoub, No. 05 CIV. 8335 (LAP), 2008 WL 194746, at *1 (S.D.N.Y. Jan. 17, 2008). The principal concern of the Court in considering the application of an out-of-state attorney to practice in this Court is to "have some reasonable assurance that the attorney is familiar with the Federal Rules of Civil Procedure, the Local Rules for the Southern District of New York, this Court's Individual Practices, as well as its customs and practices." Id.

Importantly, Mr. Avenatti has also previously been admitted to practice in the Southern District and the Second Circuit without incident in a matter entitled Arnold v. KPMG LLP, et al., No. 1:05-cv-07349 (PAC) (S.D.N.Y.). Here, Mr. Avenatti has satisfied the *pro hac vice* requirements as set forth in his application for admission. [See Ex. 1.] Indeed, nothing in Mr. Cohen's opposition suggests that any of these requirements have *not* been satisfied. Nor does Mr. Cohen cite a single statute, rule, case, or any other legal authority suggesting that *pro hac* admission should be denied based on any of the arguments put before the Court. Given the dearth of legal or factual support relating to anything having to do with Mr. Avenatti's right to advocate on behalf of his client in this Court, Mr. Cohen's arguments must be summarily rejected.

Mr. Cohen's submission does not specify what legal wrong Mr. Cohen alleges was done that would justify the extraordinary remedy of denying a *pro hac* vice admission—applications that are routinely granted as a matter of course.   And remarkably, he fails to cite any legal authority that would support the denial of *pro hac vice* admission.   In fact, Mr. Cohen does not cite the Court to *any* legal authority *at all*.[1]   Indeed, Mr. Avenatti is clearly protected by First Amendment rights of free speech to publish information on matters that, without serious dispute, are of the utmost public concern.   See, e.g., Lane v. Franks, 134 S. Ct. 2369, 2377 (2014) ("Speech by citizens on matters of public concern lies at the heart of the First Amendment, which 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'") (quoting Roth v. United States, 354 U.S. 476, 484 (1957)).   Therefore, Mr. Cohen's submission is completely devoid of merit.

In fact, in less than 48 hours after it was published, more than 99 percent of the payments to Mr. Cohen listed in the report were proven accurate either by other reporting *or by the entities themselves that made the payments.*   [See Exs. 2-5.]   Columbus Nova ($500,000), Novartis ($397,920), AT&T ($200,000), and Korea Aerospace Industries ($150,000), **all publicly admitted to hiring Mr. Cohen and paying this money.**   [See Exs.2-5.]   In the case of Novartis and AT&T, both companies were forced to disclose hundreds of thousands of dollars in additional payments made to Mr. Cohen that were not listed in the report.   [See Exs. 6-7.]   And AT&T, admitting it was a "big mistake" for the company to hire Mr. Cohen, took the bold step of forcing its Senior Executive Vice President of External and Legislative Affairs to step down over

---

[1] Mr. Cohen's citation to various unsubstantiated media reports, which are themselves hearsay, hardly qualifies as sufficient evidence to deny Mr. Avenatti's application.

the scandal.   [See Ex. 6.]    Tellingly, Mr. Cohen does not dispute any of these facts in his submission for one simple reason – he can't.

That Mr. Cohen may be dismayed that these damaging revelations have come to light and have been proven true does not come remotely close to justifying a denial of Mr. Avenatti's right to appear before this Court.   As discussed in her motion to intervene, Ms. Clifford has very important and legitimate interests in protecting her records.   She should not be denied counsel from representing and advancing those interests based on Mr. Cohen's embarrassment resulting from discomforting information being made public.

Finally, even if Mr. Cohen's allegations had any relation to the Court's determination of whether to grant *pro hac vice* admission to Mr. Avenatti in this case, Mr. Cohen has failed to meet his burden of demonstrating what legal violations have supposedly occurred.   Mr. Cohen cites no legal authority that overrides Mr. Avenatti's First Amendment rights to make public information about a public figure like Mr. Cohen regarding matters that are, without dispute, of the utmost public concern.   Further, even if Mr. Cohen's allegations were true (and they are not) laws restricting disclosure of banking information and suspicious activity reports (SARs) apply to financial institutions and government entities, not third parties.   See, e.g., 12 U.S.C. §§ 3402 (with noted exceptions, prohibiting government access to financial records); 3403 (prohibiting financial institution from releasing financial records to government unless exception applies); 15 U.S.C. §§ 6801, *et seq.* (imposing obligations on "financial institutions" to protect customer privacy); In re JPMorgan Chase Bank, N.A., 799 F.3d 36, 41-42 (1st Cir. 2015) (explaining that Bank Secrecy Act "expressly forbids disclosure only by reporting financial institutions and their officers and agents, and by government entities, officials, and agents on the receiving end of SARs" and concluding that "neither the Act nor the regulations restrict third parties—that is,

parties on neither the financial-institution side nor the government side of a SAR exchange—from disclosing the existence or non-existence of a particular SAR.").

In sum, it is difficult to conclude that Mr. Cohen's filing is anything but a highly improper attempt to soil Mr. Avenatti and unnecessarily lure and entangle this Court into Mr. Cohen's elaborate campaign to now discredit Mr. Avenatti.

For these reasons, and the reasons set forth in Mr. Avenatti's application for admission *pro hac vice* filed on May 14th, Mr. Avenatti respectfully requests the Court to grant Mr. Avenatti's application.

Dated:  May 14, 2018                          Respectfully Submitted,

                                              /s/ Michael J. Avenatti
                                              Michael J. Avenatti
                                              AVENATTI & ASSOCIATES, APC
                                              520 Newport Center Drive, Suite 1400
                                              Newport Beach, CA 92660
                                              Tel: (949) 706-7000
                                              Fax: (949) 706-7050
                                              E-Mail: mavenatti@eoalaw.com

EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

*In the Matter of Search Warrants Executed on April 9,*
*2018*

MICHAEL D. COHEN,

                          Plaintiff,

          - against –

UNITED STATES OF AMERICA,

                         Defendant.

18-MJ-3161 (KMW)

**MOTION OF MICHAEL J.**
**AVENATTI FOR ADMISSION**
***PRO HAC VICE***

       Pursuant to Rule 1.3 of the Local Rules of the United States Courts for the Southern and Eastern Districts of New York, Michael J. Avenatti, hereby moves this Court for an Order for admission to practice *pro hac vice* to appear as counsel for Intervenor Stephanie Clifford a.k.a. Stormy Daniels in the above-captioned action.

       I am in good standing of the bar of the State of California and there are no pending disciplinary proceedings against me in any State or Federal Court. I have never been convicted of a felony. I have never been censured, suspended, disbarred or denied admission or readmission by any court. I have attached the affidavit pursuant to Local Rule 1.3.

Dated: May 13, 2018

                        Respectfully Submitted,

                        Michael J. Avenatti
                        AVENATTI & ASSOCIATES, APC
                        520 Newport Center Drive, Suite 1400
                        Newport Beach, CA 92660
                        Tel: (949) 706-7000
                        Fax: (949) 706-7050
                        E-Mail: mavenatti@eoalaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

*In the Matter of Search Warrants Executed on*
*April 9, 2018*

MICHAEL D. COHEN,

       Plaintiff,

    - against –

UNITED STATES OF AMERICA,

       Defendant.

18-MJ-3161 (KMW)

**AFFIDAVIT OF MICHAEL J.**
**AVENATTI IN SUPPORT OF**
**MOTION FOR ADMISSION** *PRO*
*HAC VICE*

Michael J. Avenatti, being duly sworn, hereby deposes and says as follows:

1.  I am the managing partner of Avenatti & Associates, APC.

2.  I submit this affidavit in support of my motion for admission to practice *pro hac vice* in the above captioned matter.

3.  I am the recipient of the 2009 Trial Lawyer of the Year award from the Orange County Trial Lawyers Association. I undertook undergraduate studies at the University of Pennsylvania and I graduated at the top of my class from George Washington University Law School, where I presently serve as a member of the Board of Advisors. In 2007, I was named as one of the "Top 20 Lawyers in California Under 40" by *The Daily Journal.* I have tried cases in courts throughout the United States and have served as lead counsel in cases resulting in verdicts and settlements totaling over $1 Billion since I began my career as an attorney. Included among

1

4.     As shown in the Certificates of Good Standing annexed hereto I am a member in good standing of the Bar of the State of California.

5.     There are no pending disciplinary proceedings against me in any State or Federal Court.

6.     I have not been convicted of a felony.

7.     I have not been censured, suspended, disbarred or denied admission or readmission by any court.

8.     Wherefore your affiant respectfully submits that he be permitted to appear as counsel and advocate *pro hac vice* in this one case for Intervenor Stephanie Clifford a.k.a. Stormy Daniels.

Dated: May 13, 2018

Michael J. Avenatti
AVENATTI & ASSOCIATES, APC
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Tel: (949) 706-7000
Fax: (949) 706-7050
E-Mail: mavenatti@eoalaw.com

3

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**  CIVIL CODE § 1189

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ___Orange___ )

On ___May 13, 2018___ before me, ___Hillary C. Wolett, notary public___
Date                                         Here Insert Name and Title of the Officer

personally appeared ___Michael J. Avenatti___
Name(s) of Signer(s)

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

HILLARY CONVERSE WOLETT
Commission # 2114619
Notary Public - California
Orange County
My Comm. Expires Jun 8, 2019

Signature ___Hillary Wolett___
Signature of Notary Public

Place Notary Seal Above

─────────── OPTIONAL ───────────
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: ___admission pro hac vice___ Document Date: ___5/13/18___
Number of Pages: ___3___ Signer(s) Other Than Named Above: ___

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual ☐ Attorney in Fact
☐ Trustee ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

# THE STATE BAR
# OF CALIFORNIA

180 HOWARD STREET, SAN FRANCISCO, CALIFORNIA  94105-1617

TELEPHONE: 888-800-3400

## CERTIFICATE OF STANDING

April 26, 2018

TO WHOM IT MAY CONCERN:

This is to certify that according to the records of the State Bar, MICHAEL JOHN AVENATTI, #206929 was admitted to the practice of law in this state by the Supreme Court of California on June 1, 2000; and has been since that date, and is at date hereof, an ACTIVE member of the State Bar of California; and that no recommendation for discipline for professional or other misconduct has ever been made by the Board of Trustees or a Disciplinary Board to the Supreme Court of the State of California.

THE STATE BAR OF CALIFORNIA

Denise Velasco
Custodian of Membership Records

# United States District Court

## Central District of California

## CERTIFICATE OF
## GOOD STANDING

I, KIRY K. GRAY, Clerk of this Court, certify that

__Michael J. Avenatti__ , Bar No. __206929__

was duly admitted to practice in this Court on __July 30, 2002__
<br>DATE

and is in good standing as a member of the Bar of this Court.

Dated at Los Angeles, California

on __April 25, 2018__
<br>Date

KIRY K. GRAY
<br>Clerk of Court

By _Lupe Thrasher_ , Deputy Clerk

EXHIBIT 2

 **media**    Reliable Sources    Think    Profit    Newtube    Entertainment      

# AT&T confirms it paid Trump lawyer Michael Cohen's company

by Brian Stelter and Hadas Gold    @CNNMoney

May 9, 2018: 12:25 PM ET

✉    f    ⅴ    in    •••

Social Surge - What's Trending

 Starbucks' Howard Schultz: Our bathrooms are open to anyone who needs them

 China is the big wild card in Trump's Iran decision

 Iran fears send US oil above $70 for first time since 2014

AT&T confirms it paid Trump lawyer Michael Cohen's company

AT&T confirmed Tuesday evening that it paid President Trump's personal lawyer Michael Cohen in 2017 for "insights into understanding the new administration."

The payments were revealed in a document published by Stormy Daniels' attorney Michael Avenatti Tuesday afternoon.

Avenatti alleged that Essential Consultants, a shell company set up by Cohen before the election to pay Daniels, was paid by several corporations, including AT&T. At the time, AT&T was seeking government approval for its acquisition of Time Warner, CNN's parent company.

A document released by Avenatti stated that "Essential received $200,000 in four separate payments of $50,000 in late 2017 and early 2018 from AT&T."

AT&T disputed this timeline.

"Essential Consulting was one of several firms we engaged in early 2017 to provide insights into understanding the new administration," AT&T said Tuesday evening. "They did no legal or lobbying work for us, and the contract ended in December 2017."

Related: Exclusive: Mueller's team questions Russian oligarch about payments to Cohen

AT&T's assertion, in essence, is that Cohen provided information about what made Trump tick.

Advertisement

Newsletter

AT&T declined to comment on the total amount of the payments. But a source with knowledge of the matter said the total was actually higher than the $200,000 listed by Avenatti.

AT&T, one of the biggest companies in the country, has numerous issues before the government, including valuable government contracts and changes to so-called "net neutrality" regulations.

But the timing of payments to a Trump lawyer is especially significant because of the AT&T-Time Warner deal.

Trump, then the GOP nominee for president, expressed opposition to the $85 billion deal on the day it was announced.

When Trump won the election, there were immediate questions about whether the deal would be blocked by the Trump administration's Justice Department.

After a year-long review process, the DOJ sued to block the deal last November, saying it would violate antitrust law by harming competition and leading to an increase in prices paid by consumers. AT&T and Time Warner deny that the purchase would causes television prices to go up, and say they need the deal to better compete with the likes of Facebook, Google, Amazon and Netflix.

The payments to Cohen stopped in December, according to AT&T. At the time, pre-trial status conferences were getting started.

Politics initially looked likely to be a major theme of the trial. Citing Trump's animus toward CNN, AT&T and Time Warner claimed his Justice Department was selectively enforcing antitrust law. (The Justice Department has denied this.) But AT&T and Time Warner did not produce evidence of this, and after the judge hearing the case, Richard Leon, blocked discovery on certain communications from the White House that attorneys for AT&T and Time Warner attorneys had sought, the companies dropped that argument. Trump's feelings about CNN and the deal were never mentioned during the trial.

AT&T declined to comment beyond its statement. A Justice Department spokesperson also declined to comment.

The trial began in March and wrapped at the end of April. Leon is expected to issue his decision on June 12, though he has said it could come earlier.

CNNMoney (New York)
First published May 8, 2018: 6:59 PM ET

---

Paid Content



**Glasses-Wearers Are Going Crazy Over This...**
Sponsored: GlassesUSA



**The Best Natural Fat Burner You Can Eat?**
Sponsored: thermaspice.com



**The Best Way To Wipe Out $10,000 Of Debt**
Sponsored: NerdWallet

RELIABLE SOURCES

**Big personalities. Big controversies. Big exclusives.**

Sign up for the tip sheet of the media industry, brought to you by Brian Stelter, Dylan Byers, and the best media team in the business.

Enter email address

Subscribe  ›

Paid Content                          by Outbrain |



**9 Reasons This Electric Toothbrush is Worth All The**
quip



**California: Say Goodbye To Your Mortgage If You**
Senior Saver



**These Luxury African Safaris Are Mind Blowing! And**
Ysearches - Search



**Our Most-Shared Recipes Ever**
Taste of Home

More from CNNMoney



**ESPN's new 'SportsCenter' hosts are Sage Steele and Kevin...**



**Postal Service losses soar to $1.3 billion, but don't blame...**



**What happened with Ronan Farrow and NBC? Some answers may be...**



**Sony is buying a stake in Snoopy**



**Disney union can now represent the park's Lyft drivers**

More CNNMoney video                    by Outbrain



**Vintage Ads That Are Definitely From Before...**
Sponsored: @TopixOffbeat



**These Wallet-Friendly, Walkable Heels Keep...**
Sponsored: InStyle



**The Brutal Scandal That Ended Duck Dynasty**
Sponsored: Definition



Nordstrom Rack apologizes for falsely accusing black teens of stealing



6 places that will pay you to live there



Ford stops production of F-150 trucks

## Paid Content

[Gallery Story] Lottery Winner Leaves His Wife A Note: We Are Broke *Herald Weekly*

95% Of Americans Can't Name All These Superheroes [Quiz] *@TopixOffbeat*

[Pics] Wreckage Believed To Be Missing Malaysian Flight Found And It's Riddled With Bullets
*Absolutehistory*

[Photos] You Don't Realize How Big He Is Until You See Him With Other People *Tie Breaker*

## More from CNN Money

Pauley Perrette bids farewell to 'NCIS'

Flight MH370 is still missing, but the search has revealed two ships that vanished 140 years ago

Rolls-Royce reveals its first SUV

Ford dropping all but 2 cars from its North American dealerships

Recommended by

## Paid Links

| | |
|---|---|
| 2018 BEST STOCKS TO BUY | BEST STOCKS TO BUY RIGHT NOW |
| 7% INTEREST SAVINGS ACCOUNTS | BEST 20 DIVIDEND PAYING STOCKS |
| CHEAPEST CAR INSURANCE COMPANIES | GOOD STOCKS TO INVEST |
| ANNUITY RATES OF 2018 | BEST DIVIDEND STOCKS TO BUY |

CNNMoney Sponsors

SmartAsset                                    Paid Partner

Top Bank Announces 1.65% APY Savings Account

Certificate of Deposit Rates

Earn More on Your Savings

Open a Money Market Account

MyFinance                                     Paid Partner

Two Savings Account That Pay 10 Times What Your Bank Pays

A Jaw-Dropping Card With a 0% Apr Until May 2019

How to 10x Your Savings With These New Accounts

Pay No Balance Transfer Fees With This 0% APR Card

Advertisement



© 2018 Cable News Network. A Time Warner Company. All Rights
Reserved. Terms under which this is provided to you. Privacy Policy.
AdChoices

EXHIBIT 3

The Washington Post

**Investigations**

# South Korean firm paid Michael Cohen $150,000 as it sought contract from U.S. government

By **Shawn Boburg** and **Aaron C. Davis**   May 9

The South Korean aviation firm that in November paid $150,000 to a shell company run by Michael Cohen, President Trump's personal attorney, was at the time embroiled in a major corruption scandal and seeking to land a lucrative defense contract from the U.S. government.

Korea Aerospace Industries said in a statement Wednesday the payment was for advice on matters that included "Cost Accounting Standards," highly technical bookkeeping rules that would apply to the company's bid for U.S. defense work. KAI said its contract with the company, Essential Consultants, ended in November.

KAI said Essential Consultants did no legal or lobbying work regarding its bid for the contract. Cohen did not respond to calls seeking comment.

From outward appearances, Cohen seems an unusual choice to advise a South Korean aviation company on U.S. government accounting standards.

A former personal-injury attorney from Long Island who ran a taxi business in New York City, Cohen was Trump's fixer as an executive in his real estate company for more than a decade. Cohen has no known experience in government or defense contracting.

ADVERTISING

 Replay

KAI's payment to Cohen, along with payments last year from AT&T and Novartis, were revealed Tuesday by Michael Avenatti, the lawyer for adult-film star Stormy Daniels, who in 2016 was paid $130,000 through Essential Consultants to keep quiet about her alleged affair with Trump. The

companies paid Cohen for a range of services, as Cohen leveraged his proximity with the president to develop a lucrative sideline business.

All three companies subsequently confirmed the payments, and AT&T and Novartis said special counsel Robert S. Mueller III sought information from them late last year.

In September 2017, two months before the payment to Cohen, former KAI chief executive Ha Seong-yong and another high-ranking company official were arrested on allegations of embezzlement and fraudulently overstating the company's revenue by a total of $500 million over several years — a development that some industry analysts speculated could hurt the firm's chances at winning a major contract with the U.S. government.

The company, which is majority-owned by the South Korean government, told South Korean regulators the following month that it was working to increase its "accounting transparencies" and tighten internal auditing to prevent future accounting fraud, documents show.

It's not clear when or how the firm's contract with Cohen began or whether his work was related to the accounting scandal. The payment came the same month that Trump visited Moon Jae-in, the president of South Korea, who has publicly backed the aviation company's efforts to win the U.S. contract.

KAI and U.S.-based defense giant Lockheed Martin have for more than two years been pursuing a $16 billion contract with the U.S. Air Force to provide a fleet of more than 300 training jets.

The Pentagon had planned to announce an award of the contract in December 2017 but said that month that it was not ready to do so. An Air Force official said Monday that it now expects to award the contract within the next year.

In its statement, KAI said Essential Consultants provided advice on legal and accounting matters.

"KAI received legal counseling service from Essential Consultants LLC to inform reorganization of our (KAI's) internal accounting system, which also involved several other accounting & professional service providers," said Oh Sung-keun, deputy senior manager in the company's public relations department. "EC provided insights into Cost Accounting Standards (CAS) and other accounting standards in the U.S. KAI's contract with EC ended in November last year, and there hasn't been any exchange since then."

Oh said that KAI was unaware of Essential Consultants' ties to Trump. "In fact, we are somewhat perplexed by these alleged connections that surfaced recently," Oh said, without elaborating.

Lockheed Martin said in a statement that it was not aware of KAI's contract with Cohen.

"We have no knowledge of a business relationship between Korea Aerospace Industries and Mr. Cohen, and are not aware of any connection that it may have to the U.S. Air Force Advanced Pilot Training competition," company spokeswoman Maureen Schumann said of the jet-training contract.

Bill Lennett, an accountant who specializes in government accounting rules, said Cost Accounting Standards apply to federal contracts that exceed $50 million.

"They are rules that determine how a government contractor accounts for its costs and, in turn, how they can bill the government," he said. "Most accountants, let alone attorneys, don't know much about this stuff unless they are used to working with government contractors."

It is possible that Cohen's firm hired a consultant who specializes in this arcane area of government contracting law, Lennett said.

In September, South Korean news reports cited industry analysts who said the corruption scandal could endanger the lucrative contract with the U.S. government. "The biggest concern appears to be the company losing its credibility overseas, a crucial factor in business-to-government deals,"

a report in the Korea Herald said.

According to the paper, Moon had already asked Trump for his support for the Lockheed-KAI venture. The two first met in June.

The U.S. military can bar companies from federal contracts if they are found to have engaged in financial impropriety. KAI has no suspensions or debarments restricting contract work with the U.S. government, according to a federal database.

In October, a month before the payment to Cohen, Moon urged KAI's interim chief executive, Jeong Seong-seop, to focus on exporting its training jet fighter, according to published reports.

"Please work hard to make this business an export success," Moon said at an international aeronautics exhibition.

On the company's website, the current chief executive, Kim Jo-Won, wrote that the KAI would "build up a management system that is suitable for international standards."

"As a fundamental philosophy of managing the company, I will put ethics before a short-term profit, and apply a zero-tolerance policy strictly to any ethics-breaching employee, regardless of their status."

*Tom Hamburger contributed to this report from Washington, and Min Joo Kim contributed from Seoul.*

💬 **199 Comments**

Shawn Boburg is a reporter for The Washington Post's investigative unit. He was previously an accountability reporter for the Metro section. He joined The Post in 2015. 🐦 Follow @ShawnBoburg

Aaron Davis is an investigative reporter who joined The Post as a staff writer in 2008. He has covered local, state and federal government, as well as the aviation industry and law enforcement, among other topics. He was a member of the Post team that was a finalist for the Pulitzer Prize for coverage of the 2013 Navy Yard shooting. 🐦 Follow @byaaroncdavis

## The story must be told.

Your subscription supports journalism that matters.

Try 1 month for $1

EXHIBIT 4

DOW JONES, A NEWS CORP COMPANY ▾

| DJIA **24899.41** 0.27% ▲ | S&P 500 **2730.13** 0.09% ▲ | Nasdaq **7411.32** 0.11% ▲ | U.S. 10 Yr **0/32 Yield** 2.999% ▲ | Crude Oil **71.13** 0.24% ▲ | Euro **1.1932** 0.03% ▲ |

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

https://www.wsj.com/articles/at-t-paid-trump-lawyer-for-insights-on-administration-1525821278

BUSINESS

# Trump Lawyer Received $500,000 From Firm Linked to Russian Oligarch

AT&T also made consulting payments to Michael Cohen's company in 2017



Michael Cohen exits a hotel in New York last month. **PHOTO:** BRENDAN MCDERMID/REUTERS

*By Rebecca Davis O'Brien, Drew FitzGerald, Michael Rothfeld and Rebecca Ballhaus*

Updated May 8, 2018 10:05 p.m. ET

A company created by Michael Cohen, President Donald Trump's personal lawyer, received $500,000 in 2017 from an investment fund linked to a Russian oligarch, according to a person familiar with the matter.

Separately, AT&T Inc. said it made payments to Mr. Cohen's company in 2017 for "insights" into the administration at a time when the telecommunications giant needed government approval for an $85 billion takeover of Time Warner Inc.

The payments were made to Essential Consultants LLC, a company Mr. Cohen established in Delaware that he also used in October 2016 to make a $130,000 payment to former adult-film actress Stephanie Clifford, known professionally as Stormy Daniels, who had alleged she had a sexual encounter with Mr. Trump in 2006. Messrs. Trump and Cohen deny the encounter.

The payments were revealed in a memo released through Twitter by Michael Avenatti, a lawyer for Ms. Clifford.

Essential Consultants received payments in 2017 from an investment-management firm called Columbus Nova, that company confirmed Tuesday. Columbus Nova's biggest investor is a company founded by Russian oligarch Viktor Vekselberg, one of the richest men in Russia who has close ties to the Kremlin, and Columbus Nova is run by Mr. Vekselberg's cousin, Andrew Intrater.

---

MORE

- U.S. Probes Cohen Over Cash He Built Up During Campaign
- Giuliani Says Trump Doesn't Have to Comply With Mueller Subpoena, Could Invoke Fifth Amendment
- Giuliani Seeks to 'Clarify' Remarks About Stormy Daniels Payment
- Trump Gambit Stuns Staff

---

"Neither Viktor Vekselberg nor Renova has ever had any contractual relationship with Mr. Cohen or Essential Consultants," Andrey Shtorkh, Mr. Vekselberg's spokesman, told The Wall Street Journal. Renova Group is Mr. Vekselberg's holding company. Mr. Vekselberg and Renova were sanctioned by the U.S. in April.

Richard Owens of Latham & Watkins, which represents Columbus Nova, said the company "is a management company solely owned and controlled by Americans. After Mr. Trump's inauguration, the firm hired Michael Cohen as a business consultant regarding potential sources of capital and potential investments in real estate and other ventures." Mr. Owens added that "reports today that Viktor Vekselberg used Columbus Nova as a conduit for payments to Michael Cohen are false."

Mr. Avenatti's memo Tuesday listed several alleged financial transactions involving Mr. Cohen and others from late 2016 until early 2018. Mr. Avenatti declined to comment.

Federal authorities are investigating Mr. Cohen's business affairs, examining among other things whether he violated any laws in his efforts to raise cash and conceal negative information about Mr. Trump, according to people familiar with the matter. Federal Bureau of Investigation agents raided Mr. Cohen's premises last month. Mr. Cohen declined to comment.

The Wall Street Journal first reported on the payment to Ms. Clifford and on Mr. Cohen's use of Essential Consultants in January 2018.

AT&T acknowledged Tuesday evening that it had hired Mr. Cohen's firm.

> "Essential Consultants was one of several firms we engaged in early 2017 to provide insights into understanding the new administration," the company said in a statement. "They did no legal or lobbying work for us, and the contract ended in December 2017."

Mr. Avenatti's memo alleged that AT&T made four payments to Mr. Cohen's firm totaling $200,000 from October 2017 to January 2018. AT&T's monthly payments started earlier, according to a person familiar with the matter. "Right around [when the] inauguration is happening, we need somebody who knows the administration," the person said. "How does he think? What are their priorities?"

The Justice Department filed an antitrust lawsuit in November 2017 to block AT&T's proposed merger with Time Warner. The two sides have spent the past two months battling in federal court. The deal's outcome is now in the hands of a federal judge, who is expected to rule on June 12.

Several associates of Mr. Vekselberg, the Russian oligarch, have made donations in recent years to Trump-related efforts. Mr. Vekselberg's cousin, Mr. Intrater, donated $35,000 to a joint fund between the Trump campaign and the Republican National Committee in June 2017, according to Federal Election Commission records. Mr. Intrater also donated $250,000 to Mr. Trump's inaugural fund.

Mr. Avenatti's memo also alleged that Novartis AG  NVS **1.01% ▲**  made several payments to Mr. Cohen in late 2017 and early 2018 totaling $399,900.

Novartis responded that in February 2017 the drug maker entered into a one-year agreement with Essential Consultants shortly after Donald Trump's election, focused on U.S. health-care policy matters. The agreement has since expired. The company also said the engagement of Essential Consultants pre-dated Vas Narasimhan becoming Novartis CEO and that he had no involvement in it.

Novartis said it was contacted in November 2017 by lawyers from the Special Counsel's office regarding the company's agreement with Essential Consultants, it cooperated fully, and isn't aware of any outstanding questions.

The memo also lists payments from Elliott Broidy, a venture capitalist and top Republican fundraiser, to Mr. Cohen through Essential Consultants. Those payments correspond with those previously reported by the Journal relating to a $1.6 million nondisclosure agreement Mr. Cohen negotiated for Mr. Broidy with a former Playboy model who had alleged she became pregnant during an affair with the venture capitalist.

Mr. Broidy's spokesman said in a statement: "In legal settlements, a client sometimes tenders their settlement funds to a lawyer's client trust account and the lawyer then forwards those funds.  We look forward to Michael Avenatti providing context to this benign issue."

The Avenatti memo also said Korea Aerospace Industries Ltd. made a $150,000 payment to Mr. Cohen in November 2017. Korea Aerospace said it hired Essential for legal counseling regarding U.S. accounting standards.

—Joe Palazzolo, Brett Forrest and Julie Bykowicz contributed to this article.

**Write to** Rebecca Davis O'Brien at Rebecca.OBrien@wsj.com, Drew FitzGerald at andrew.fitzgerald@wsj.com, Michael Rothfeld at michael.rothfeld@wsj.com and Rebecca Ballhaus at Rebecca.Ballhaus@wsj.com

*Appeared in the May 9, 2018, print edition as 'Firm Linked to Oligarch Paid Trump Lawyer.'*

Copyright &copy;2017 Dow Jones &amp; Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

EXHIBIT 5

DOW JONES, A NEWS CORP COMPANY

DJIA **24899.41** 0.27% ▲     S&P 500 **2730.13** 0.09% ▲     Nasdaq **7411.32** 0.11% ▲     U.S. 10 Yr **0/32 Yield** 2.999% ▲     Crude Oil **71.14** 0.25% ▲     Euro **1.1932** 0.03% ▲

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

https://www.wsj.com/articles/novartis-ceo-calls-hiring-of-trump-lawyer-michael-cohen-a-mistake-1525980601

BUSINESS

# Novartis CEO Calls Hiring of Trump Lawyer Michael Cohen a 'Mistake'

In an email to employees, company's chief said he felt 'frustrated' by the arrangement



Vasant Narasimhan, who became chief executive in February, said he 'was not involved in any aspect of this situation.' **PHOTO:** RUBEN SPRICH/AGENCE FRANCE-PRESSE/GETTY IMAGES

*By Jonathan D. Rockoff*

May 10, 2018 3:30 p.m. ET

Novartis AG <u>NVS **1.01%** ▲</u> Chief Executive Vasant Narasimhan said the company "made a mistake" agreeing to pay Trump lawyer Michael Cohen $1.2 million for what Novartis has described as his insight into health-care policy.

In an email to the Swiss drug company's employees on Thursday reviewed by The Wall Street Journal, Dr. Narasimhan said he felt "frustrated" by the arrangement, which was struck under a previous chief executive. "Many of you will feel disappointed and frustrated," he said.

"We made a mistake in entering into this engagement and, as a consequence, are being criticized by a world that expects more from us," Dr. Narasimhan said in the email, which was earlier reported by STAT, a healthcare publication of Boston Globe Media.

Dr. Narasimhan, who joined the company in 2005 and became chief executive in February, said he "was not involved in any aspect of this situation."

---

Novartis disclosed earlier this week that it paid Mr. Cohen's company Essential Consultants LLC $100,000 a month under the one-year contract, which ended in February.

The private company was the same one Mr. Cohen used to direct $130,000 in October 2016 to a former adult-film actress, who goes by the name Stormy Daniels, to prevent her from discussing an alleged sexual encounter with Mr. Trump. Messrs. Trump and Cohen deny the encounter took place.

Novartis, one of the world's biggest drug companies by sales, said its aim by hiring Essential Consultants was to gain better understanding of Trump administration policy-making, especially regarding matters like the status of the Affordable Care Act. Companies routinely pay advisers for policy advice in Washington.

Novartis said Wednesday it realized from its first meeting with Mr. Cohen in March 2017 that he wouldn't be helpful and stopped engaging with him. The company said it determined it couldn't

scrap the contract and continued making the payments.

Novartis said it has provided information to special counsel Robert Mueller's office regarding its agreement with Mr. Cohen's company.

Dr. Narasimhan said in the email to Novartis employees that he went to sleep Wednesday night "frustrated and tired." He urged employees to stay focused on the company's mission "serving patients."

Copyright &copy;2017 Dow Jones &amp; Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit http://www.djreprints.com.

EXHIBIT 6

DOW JONES, A NEWS CORP COMPANY

DJIA **24899.41** 0.27% ▲    S&P 500 **2730.13** 0.09% ▲    Nasdaq **7411.32** 0.11% ▲    U.S. 10 Yr **0/32 Yield** 2.999% ▲    Crude Oil **71.13** 0.24% ▲    Euro **1.1931** 0.03% ▲

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit
http://www.djreprints.com.
https://www.wsj.com/articles/at-t-exec-who-oversaw-michael-cohens-contract-forced-out-1526046307

CONSUMER TECHNOLOGY

# AT&T Executive Who Oversaw Michael Cohen's Contract Forced Out

Telecom giant calls hire of Trump attorney Cohen a 'big mistake'; company paid him through same
vehicle he used to direct $130,000 to Stormy Daniels



AT&T executive Bob Quinn arriving for a meeting with U.S. President-elect Donald Trump at Trump Tower in New York on Jan.
12, 2017. **PHOTO:** MIKE SEGAR/REUTERS

*By Drew FitzGerald*
Updated May 11, 2018 8:00 p.m. ET

AT&T Inc. T -0.31% ▼ boss Randall Stephenson told employees Friday it was a mistake to hire
Trump attorney Michael Cohen and ousted the telecom's giant's top Washington executive
after his office paid Mr. Cohen $600,000 last year.

"Our reputation has been damaged," Mr. Stephenson wrote in a memo to staff. "There is no
other way to say it—AT&T hiring Michael Cohen as a political consultant was a big mistake."

Mr. Cohen, President Donald Trump's longtime personal attorney, pursued opportunities with
several companies after the election, pitching himself as a consultant with an entree to the
highest levels of the new administration.

RELATED

- Read AT&T CEO's Memo to Employees
- Mueller Asked Ford for Records After It Rejected Michael Cohen Consulting Overture
- How a Firm That Paid Stormy Daniels Hush Money Became Enmeshed in Federal Probes (May 10)
- Novartis and AT&T Bet $1.8 Million on Cohen's Policy Advice (May 9)
- Trump Lawyer Helped Recruit Corporate Client With Ties to Kushner Probe (May 9)
- Trump Lawyer Received $500,000 From Firm Linked to Russian Oligarch (May 8)
- Trump's Stormy History: The Seven-Year Battle Between the President and the Porn Star (March 20)

Mr. Cohen also
reached out to
Ford Motor Co. ,
but the car
maker turned
him down,
according to
people familiar
with the matter.
Special counsel
Robert Mueller's
office has since requested information from Ford about the outreach, including emails and
records, and has interviewed Ford's head of government affairs, Ziad Ojakli, the people said.

Mr. Mueller's office also contacted AT&T and Novartis AG , which said this week it paid Mr.
Cohen $1.2 million in consulting fees; the companies said they cooperated with Mr. Mueller's
request for information.

AT&T hired Mr. Cohen shortly after the president's inauguration and agreed to pay $50,000 a
month for insights into the new administration, according to other people familiar with the
matter. Mr. Cohen first asked the company to pay $150,000 a month, the people said. That
would have put his consulting fee at $1.8 million for the year.

The company needed government approval for its $85 billion takeover of Time Warner Inc. and
knew little about the new president, who had criticized the deal on the campaign trail. It was

searching for people who were familiar with the president's thinking and priorities, but the company discovered after a few meetings in early 2017 that Mr. Cohen didn't have much information to offer and discussions with him dried up after that, the people said.

On Friday, Mr. Stephenson told employees that Senior Executive Vice President Bob Quinn was retiring, but people familiar with the matter said the policy chief was forced to leave. Mr. Quinn, a lawyer who joined the company in 1993 and took over its Washington office in October 2016, didn't respond to requests for comment.

Federal prosecutors in Manhattan are investigating Mr. Cohen to determine whether he violated any laws in his efforts to raise cash and conceal negative information about Mr. Trump during the 2016 presidential campaign, according to people familiar with the matter. A lawyer for Mr. Cohen declined to comment Friday.

Companies often hire consultants to explain the federal bureaucracy to them. Such advisers can legally work for clients without registering as lobbyists as long as they avoid pitching elected officials on specific policies. "It's a whole industry here in Washington built around providing deep information on how the government is likely to address complex issues," said Karl Sandstrom, a senior counsel at law firm Perkins Coie LLP and a former commissioner at the Federal Election Commission.

But he questioned how Mr. Cohen, who has no background in communications or antitrust law, could have helped the company. "Nobody's going to pay you $600,000 to tell you something you could have read in your paper this morning," Mr. Sandstrom said.

On Thursday, Novartis Chief Executive Vasant Narasimhan told employees in an email that hiring Mr. Cohen was a mistake and he was frustrated by the arrangement, which was struck under a previous CEO. The drug company said it realized from its first meeting with Mr. Cohen in March 2017 that he wouldn't be helpful and stopped engaging with him.

AT&T and Novartis paid Mr. Cohen through the same vehicle, Essential Consultants LLC, that Mr. Cohen used in October 2016 to direct $130,000 to the former adult-film actress known professionally as Stormy Daniels to stay silent about an alleged sexual encounter with Mr. Trump in 2006. Mr. Trump has denied the sexual encounter.

AT&T told employees that Mr. Cohen didn't perform legal or lobbying work for the company, adding "it was not until the following month in January 2018 that the media first reported, and AT&T first became aware of, the current controversy surrounding Cohen."

It is unclear what AT&T got from Mr. Cohen, a real-estate lawyer who worked at the Trump Organization for nearly a decade. AT&T said Mr. Cohen didn't arrange any meetings for the company with the president and that the contract ended after December 2017.

The Justice Department filed an antitrust lawsuit in November 2017 to block AT&T's proposed purchase of Time Warner. The two sides have spent the past two months battling in federal court. The deal's outcome is now in the hands of a federal judge, who is expected to rule on June 12.

The arguments focused on how the proposed transaction would affect competition and consumers, though AT&T also has maintained that its merger was targeted for political reasons because Mr. Trump, a Republican, dislikes the coverage he has received from Time Warner's CNN.

The judge prevented the companies from fully exploring that claim, denying their request for access to certain internal government communications. The Justice Department has denied politics played any role in the lawsuit. Department officials were surprised by the AT&T-Cohen revelations, a person familiar with the matter said.

AT&T is no stranger to Washington politics. It has one of the largest lobbying operations in the capital and its political-action committee is one of the country's top corporate contributors. AT&T spent more than $16 million on federal lobbying each of the last two years.

On Friday, Mr. Stephenson told staff the company's general counsel, David McAtee, will take over the company's Washington operations. "David's number one priority," the CEO wrote to employees, "is to ensure every one of the individuals and firms we use in the political arena are people who share our high standards."

*—Peter Nicholas and Christina Rogers contributed to this article.*

**Write to** Drew FitzGerald at andrew.fitzgerald@wsj.com

*Appeared in the May 12, 2018, print edition as 'AT&T Regrets Hiring Cohen, Ousts Executive.'*

Copyright &copy;2017 Dow Jones &amp; Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit
http://www.djreprints.com.

EXHIBIT 7

**Trump Russia ties**

## Novartis admits $1.2m in payments to Trump lawyer

AT&T and Korea Aerospace also say money to Cohen was for legitimate consulting



Michael Cohen, lawyer for President Donald Trump, was hired by Korea Aerospace Industries as part of its effort to meet US accounting standards, the defence company says

Ralph Atkins in Zurich, Kadhim Shubber in Washington and Bryan Harris in Seoul MAY 9, 2018

Novartis has admitted paying $1.2m to an entity owned by Donald Trump's personal lawyer in the year following his 2017 inauguration, drawing the Swiss pharmaceutical company deeper into a controversy over whether multinationals improperly sought access to the president's inner circle.

The payments, made in $100,000 monthly instalments to Michael Cohen's Essential Consultants, were intended to help the company navigate the new administration's healthcare agenda following a campaign in which Mr Trump had vowed to scrap his predecessor's Obamacare reforms.

Eric Althoff, a spokesperson for Novartis, told the Financial Times that Mr Cohen had contacted then-chief executive Joseph Jimenez offering to help the company gain access to the new administration.

Mr Jimenez then directed his team to engage with Mr Cohen, said Mr Althoff. In February 2017, Novartis began a one-year contract with Essential Consultants.

"We were approached by Cohen who offered to advise on how to gain access to the administration," said Mr Althoff. He said it was typical in Washington for companies to engage with "lobbyists who are also door openers, so to speak".

"Initially that was kind of the illusion that we were under," he added.

Robert Mueller, the special counsel investigating the Trump campaign's ties to Russia, contacted Novartis about its relationship with Mr Cohen in November 2017, the company said in a statement, and management provided "all the information requested".

Although it is commonplace for major multinationals to hire lobbyists close to an incoming administration to influence legislation, Mr Cohen was not a registered lobbyist and served as Mr Trump's longtime personal attorney during his time as a New York property developer. Critics have characterised the funds as a "pay for play" agreement.

The revelation comes the day after Michael Avenatti, a lawyer for porn star Stormy Daniels (whose legal name is Stephanie Clifford), published a memo accusing three multinationals — Novartis, AT&T and Korea Aerospace Industries — and a US-based investment firm with ties to Russian billionaire Viktor Vekselberg, who was sanctioned by the US earlier this year, of making payments to Mr Cohen's company.

All three multinationals have denied any impropriety, as has the investment firm, Columbus Nova.

Attorneys for Mr Cohen said in a court filing on Wednesday that Mr Avenatti had "deliberately distorted" the facts to create "a toxic mix of misinformation".

The filing in the case regarding documents seized from Mr Cohen's office, hotel and home last month noted Columbus Nova's denial that Mr Vekselberg had any role in its arrangement with Essential Consultants.

Mr Cohen's lawyers also said that Mr Avenatti had published information that appeared to be from their client's bank records.

AT&T, which was accused of paying Essential Consultants $200,000 and had a $85bn takeover of Time Warner pending before US regulators, has acknowledged hiring the firm "to provide insights into understanding the new administration".

The company made payments of $50,000 over four months, according to the memo. A source familiar with the matter said AT&T had a year-long contract, which ended in December 2017, suggesting it paid a total of $600,000.

Korea Aerospace, a South Korean defence company vying for its biggest-ever contract with the US government, maintained it hired Mr Cohen for "advice" on "local accounting standards" in the US.

But the revelation by Novartis, which was originally accused of paying just $400,000, would make it by far the largest known corporate client of Essential Consultants.

The company set up by Mr Cohen in 2016 was used to pay Ms Daniels $130,000 before the US election in return for her silence about an alleged 2006 affair with Mr Trump. Mr Trump has denied the affair.

Novartis said a meeting with Mr Cohen shortly after signing the original one-year contract made it clear he "would be unable to provide the services that Novartis had anticipated". The company said it decided against engaging further. But under the terms of the deal, Novartis said it "unfortunately" was bound to continue the monthly payments until February 2018.

**Recommended**

One executive termed the contract "regrettable", and the company emphasised the deal was signed before

Van Narasimhan became chief executive in September. "He was in no way involved with this agreement," it said.

According to the memo released by Ms Daniels' lawyer, Korean Aerospace paid Essential Consultants $150,000. The group is bidding for a $15bn defence contract under which it would sell 350 training jets to the Pentagon as part of a consortium with Lockheed Martin.

"We received advice from Mr Cohen's entity on local accounting standards and the payment to the entity was legal," the Korean company said. "We are doing our best to meet global accounting standards."

AT&T is awaiting a court decision on its takeover of Time Warner, which the Department of Justice sued to block in November 2017. During a campaign appearance in 2016, Mr Trump called the merger "a deal we will not approve in my administration because it's too much concentration of power in the hands of too few".

After Novartis, the largest corporate payment detailed by Ms Daniels' lawyer was $500,000 from Columbus Nova, a US-based investment management firm. Columbus Nova is described on its website as the "US investment vehicle for the Renova Group", the Russian conglomerate run by Viktor Vekselberg. Mr Vekselberg and Renova Group were sanctioned over election meddling by the US earlier this year.

Richard Owens, a lawyer for Columbus Nova, said the firm had hired Mr Cohen as a business consultant, and the reports Mr Vekselberg used Columbus Nova as a conduit for payments to Michael Cohen were false.

*Additional reporting by Song Jung-a and Kang Buseong in Seoul*

Copyright The Financial Times Limited 2018. All rights reserved.

**Latest on Trump Russia ties**