**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In the Matter of Search Warrants Executed on April 9, 2018* | |
| Michael D. Cohen, | |
|                              Plaintiff, | 18-MJ-3161 (KMW) |
|                  - against - | |
| United States of America, | |
|                              Defendant. | |

**Memorandum of Law in Opposition to the *Pro Hac Vice* Application of Michael Avenatti**

McDermott Will & Emery LLP
Todd Harrison
Stephen Ryan (*pro hac vice*)
Joseph B. Evans
340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

*Attorneys for Plaintiff Michael D. Cohen*

We represent plaintiff Michael D. Cohen ("Mr. Cohen") in the above-referenced matter. We write in response to the Court's order, dated May 16, 2018, permitting Mr. Cohen to respond to Mr. Avenatti's letter and motion for admission *pro hac vice*. ECF 50. Mr. Avenatti's motion should be denied. While we recognize that *pro hac vice* motions are routinely granted, this is an exceptional case, and Mr. Avenatti's actions warrant a denial, particularly given his tangential relationship to this case. Mr. Avenatti appears to have violated the Local Rules of this Court, as well as the ethical rules applicable to lawyers practicing in this District.

Rule 3.6 of the New York Rules of Professional Conduct, provides the following:

> A lawyer who is participating in or has participated in a criminal or civil matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

N.Y. Rules of Prof'l Conduct 3.6(a). The New York Rules of Professional Conduct also provide that "[i]n the course of representing a client, a lawyer shall not knowingly make a false statement of fact or law to a third person." N.Y. Rules of Prof'l Conduct 4.1.

Mr. Avenatti appears to have repeatedly violated these rules.

As noted in our opening brief, on May 8, 2018, Mr. Avenatti published inaccurate statements regarding Mr. Cohen. Second, Mr. Avenatti also published, at the same time, factually accurate information regarding Mr. Cohen's banking transactions that had no lawful source, and we requested that the Court inquire as to how he obtained the information. Third, Mr. Avenatti made further inaccurate statements to the public, all with the purpose of prejudicing Mr. Cohen in the proceedings in which Mr. Avenatti now seeks admission. ECF 41. All of these

issues have ripened factually since that time, and Mr. Avenatti has demonstrated that his participation in this process would be detrimental to the careful review procedure that is currently being overseen by the Special Master.

The ongoing inaccurate statements started the very day Mr. Avenatti announced at a press conference his representation of Ms. Clifford.  Since then, he has made numerous claims against Mr. Cohen that lack accuracy and factual support.  Mr. Avenatti appears to be primarily focused on smearing Mr. Cohen publicly in his efforts to further his own interest in garnering as much media attention as possible.

With regard to Mr. Avenatti's publishing of inaccurate statements, he claimed certain foreign bank accounts as belonging to the plaintiff, Michael D. Cohen.  In our opening letter, we pointed out that this was incorrect and identified through open source reporting the non-plaintiff Michael Cohens in Israel and Tanzania as the individuals whose bank records had actually been disclosed by Mr. Avenatti.  When confronted with his reckless publishing of inaccurate allegations and the improper release of the private banking information of completely unrelated individuals, Mr. Avenatti did not apologize for, correct, or retract the incorrect information he had published.  Rather, he simply avoided the issue and responded – on Twitter – "Out off [sic] of approximately $3 million worth of transactions we listed, you claim we are wrong on less than $25,000 and thus we are inaccurate?  So we are only 99.0% right?  *What a joke*." Michael Avenatti, Twitter (May 9, 2018, 11:00 PM) (emphasis added).

Since the submission of our letter on May 9, seemingly authoritative press accounts have also detailed that a federal law enforcement official apparently intentionally disclosed to Mr.

Avenatti directly or indirectly certain suspicious activity reports (SARs) reports regarding Mr. Cohen.

While not every press report is credible or without error, the *New Yorker* story published by Ronan Farrow on May 16, 2018, quoted the law enforcement official who disclosed the information as being "terrified" about the legal consequences to him for the intentional act of disclosure. The law enforcement official is quoted as follows: "To say I am terrified right now would be an understatement." Ronan Farrow, *Missing Files Motivated the Leak of Michael Cohen's Financial Records*, **New Yorker** (May 16, 2018), *available at* https://www.newyorker.com/news/news-desk/missing-files-motivated-the-leak-of-michael-cohens-financial-records. There is virtually no question that any government official who leaked the information did so with the knowledge that such action was illegal.

Despite the unlawful method of disclosure, Mr. Avenatti was the person who published the confidential nonpublic information. *See* Anderson Cooper 360°, *Michael Avenatti Full Interview With Anderson Cooper*, YouTube (May 8, 2018), *available at* https://www.youtube.com/watch?v=38qntQ0NJQ0.

As we demonstrate in this letter, the rules of this Court and professional responsibility requirements governing attorneys in New York suggest that Mr. Avenatti should not be admitted by this Court pro hac vice.

**I.    Mr. Avenatti Should Not Be Granted The Privilege Of Appearing *Pro Hac Vice* as His Conduct and Repeated Inaccurate Statements Demonstrate His Lack of Fitness to Practice Before this Court**

Since the Court's appointment of a Special Master, the parties have been working with

the Special Master to complete the review of seized materials expeditiously and in accordance with the Court's order.  The interest in the fair administration of justice and orderly judicial procedures would be harmed by Mr. Avenatti's presence in this matter.  *See United States v. Smith*, 985 F. Supp. 2d 506, 540–41 (S.D.N.Y. 2013) ("[T]he Court has an independent obligation to avoid the creation of a 'carnival atmosphere' in high-profile cases. . . .  Indeed, the risk of prejudice to the fair administration of justice from a public-relations battle is heightened in high-profile cases.") (internal quotation marks omitted).  The Court must consider, among other factors, "the public's confidence in the integrity of the judicial process and the orderly administration of justice." *Id.* (citing *United States v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990), cert. denied, 500 U.S. 920 (1991)).  The Court has the right "to assure itself that an attorney applicant . . . will conduct himself professionally and ethically, and will not disrupt the proper functioning of the Court." *Sedona Corp.*, 2003 WL 22339357, at *3.

As Mr. Avenatti himself stressed in his motion in support of his application, it is "the Court's right to assure itself that an attorney applicant 'is familiar with the Federal Rules of Civil Procedure, the Local Rules for the Southern District of New York, this Court's Individual Rules, and the customs and practices of this Court.'" *Sedona Corp.*, 2003 WL 22339357, at *3 (quoting *Erbacci, Cerone, and Moriarty, Ltd. v. United States, 923 F. Supp. 482, 486 (S.D.N.Y. 1996)*; see ECF 47 at 2.  Mr. Avenatti cited the fact that he has previously been admitted to practice in this Court as an "important[]" reason – and notably the only cited reason – for why he is familiar with the Court's relevant rules.  ECF 47 at 2.  However, the fact that Mr. Avenatti has previously been admitted *pro hac vice* has no bearing on whether he should be granted such a privilege

again.  *See In re Rappaport*, 558 F.2d 87, 88 n. 1 (2d Cir. 1977) ("Admission *pro hac vice* is by definition, at most, admission for a single proceeding.").

Mr. Avenatti's deliberate public dissemination of confidential nonpublic information speaks to his character and lack of fitness to appear before this Court – as well as his craving to create a "carnival atmosphere" in this case.  *See United States v. Bruce Cutler*, 815 F, Supp.  599 608 (E.D.N.Y. 1993) (quoting *Gentile v. State Bar of Nevada,*  501 U.S. 1030, 1074 (1991)) ("Attorneys admitted to practice in this Court have a sworn obligation to have read, be familiar with, and faithfully adhere to the Rules of this Court . . . and to adhere to A.B.A. Model Rule of Professional Conduct 3.6 . . . with respect to extrajudicial statements."); *Smith*, 985 F. Supp. 2d at 540–41.

Mr. Avenatti has appeared on national television and made statements regarding Mr. Cohen 147 times over the past ten weeks, and many of these statements concerned nonpublic information and misrepresentations regarding Mr. Cohen.  *See* Brian Flood, *Anti-Trump lawyer Michael Avenatti hobnobs with CNN stars in rare free time between appearances on network*, **Fox News** (May 18, 2018), *available at* http://www.foxnews.com/entertainment/2018/05/18/anti-trump-lawyer-michael-avenatti-hobnobs-with-cnn-stars-in-rare-free-time-between-appearances-on-network.html (citing a report conducted by the Media Research Center).

Mr. Avenatti's conduct in publishing confidential nonpublic bank records – without concern for the lawfulness of their disclosure or their accuracy – was inappropriate and was intended to unfairly prejudice Mr. Cohen.  This should be extremely troubling to the Court.

Under the Gramm-Leach-Bliley Act of 1999, a "financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information," subject to certain exceptions not applicable to this matter.  15 U.S.C.A. § 6802.  Mr. Avenatti has published numerous inaccurate statements regarding Mr. Cohen and has published private bank records, which he either solicited or obtained under circumstances in which he knew or should have known that the disclosure of such records was unlawful for the person(s) supplying the information.  At the very least, he effectively solicited the disclosure of such records.  *See* Anderson Cooper 360°, *Michael Avenatti Full Interview With Anderson Cooper*, YouTube (May 8, 2018), *available at* https://www.youtube.com/watch?v=38qntQ0NJQ0 (stating on CNN that "one of the ways that [his strategy of appearing incessantly on television] is working, is because we're so out front on this, people send us information.").  None of the Michael Cohens whose private banking information Mr. Avenatti released authorized such release, and yet Mr. Avenatti widely disseminated the nonpublic bank information that he then, without basis or support, suggested were evidence of illegal and improper acts by Mr. Cohen, for the sole purpose of fanning a media storm and prejudicing Mr. Cohen.

Additionally, disclosing the existence or contents of an alleged Suspicious Activity Report ("SAR") is unlawful.  *See* 31 U.S.C.A § 5318 (g)(2).  Under the U.S. Department of Treasury's regulations, with certain exceptions, "[n]o savings association or service corporation, and no director, officer, employee, or agent of a savings association or service corporation, shall disclose a SAR or any information that would reveal the existence of a SAR."  12 C.F.R. § 563.180(d)(12)(i)(A); *see also* 31 U.S.C.A § 5318 (g)(2).  Willful violation of 12 C.F.R. §

563.180(d)(12)(i)(A) and 31 U.S.C.A § 5318 (g)(2) can result in criminal liability.  *See* 31 U.S.C.A. § 5322(a).  Mr. Avenatti knew or should have known that those who provided the information were violating the law.  Since Mr. Avenatti took it upon himself to publish such information in relation to this matter, the Court should inquire as to Mr. Avenatti's role in the disclosure of the SAR's.

The Court should consider all of this conduct in its evaluation of Mr. Avenatti's application to appear *pro hac vice* in this matter.  *Cf. Macdraw, Inc. v. The CIT Group Equipment Financing, Inc.*, 994 F. Supp. 447 (S.D.N.Y. 1997) (revoking *pro hac vice* admissions of attorneys who engaged in conduct which was undignified, disrespectful, and degrading to the Court); *Erbacci*, 923 F. Supp. at 486 (denying plaintiffs' counsel's *pro hac vice* application and noting that "[w]hile plaintiffs' counsel has twice represented to this Court in writing that they are familiar with practice before this Court, their actions have twice demonstrated that they lack even a basic understanding of how to proceed before this Court.").

The California Bar Association, of which Mr. Avenatti is a member, acknowledged in an April 18, 2018 letter that it is currently investigating a complaint regarding Mr. Avenatti's alleged lack of fitness to practice law in the state.  *See* Brooke Singman, *Michael Avenatti being investigated by California State Bar*, **Fox News** (May 17, 2018), *available at* http://www.foxnews.com/politics/2018/05/16/michael-avenatti-being-investigated-by-california-state-bar.html.  This Court's Local Rules provide that an applicant for *pro hac vice* admission to the Court certify "whether there are *any disciplinary proceedings presently against the applicant* and (d) the facts and circumstances surrounding any affirmative responses[.]" S.D.N.Y. Local

Civ. R. 1.3(c) (emphasis added).  In Mr. Avenatti's affidavit filed with this Court dated May 13, 2018, he stated "[t]here are currently no pending disciplinary proceedings against me in *any State or Federal Court*."  ECF 46-1, at 3.  Mr. Avenatti has not explained why he failed to disclose the California Bar's pending investigation into his conduct.  Accordingly, his submission does not comply with the requirements in the Court's Local Rules.

There is a substantial likelihood that Mr. Avenatti's dissemination of these nonpublic bank records with his unique mix of inaccurate claims relating to actual bank records will interfere in the procedures in which he is seeking admission, as well as the Government's investigation and the fairness of any potential proceedings concerning Mr. Cohen.  Accordingly, this Court should withhold from Mr. Avenatti the privilege of appearing *pro hac vice* before this Court in this case.

## II.     Mr. Avenatti Has No "Right" To Appear Before This Court

In support of his motion for admission, Mr. Avenatti repeatedly represented that he has a "right" to appear before this Court.  ECF 47 at 2, 4.  This is simply not correct.  The U.S. Court of Appeals for the Second Circuit and this Court have held repeatedly that "[p]ro hac vice admission is a privilege, not a right."  *Harty v. Spring Valley Marketplace LLC*, No. 15-CV-08190 (NSR), 2016 WL 8710480, at *2 (S.D.N.Y. Jan. 22, 2016) (citing *Thomas v. Cassidy*, 249 F.2d 91, 92 (4th Cir. 1957) (per curium), *cert. denied*, 355 U.S. 958 (1958)); *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03CIV.3120(KMW)(THK), 2003 WL 22339357, at *3 (S.D.N.Y. Oct. 14, 2003) ("Admission *pro hac vice* is not a right but a privilege.") (internal citations omitted)); *Erbacci, Cerone, and Moriarty, Ltd. v. United States*, 923 F. Supp. 482, 485-

86 (S.D.N.Y. 1996); *United States v. Gutierrez*, No. 94 Cr. 565(LAK), 1994 WL 593773, at *2 (S.D.N.Y. Oct. 28, 1994). Rather, the "granting of such privilege rests within the sound discretion of the presiding judge." *Harty*, 2016 WL 8710480, at *2 (citing *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 167 (2d Cir. 1966)). While *pro hac vice* admissions are routinely granted, "the Court's decision to do so is not simply a *pro forma* exercise." *Sedona Corp.*, 2003 WL 22339357, at *3.

We believe that in light of the actions described here and in our letter dated March 9, 2018, the Court should exercise its discretion and deny Mr. Avenatti the privilege of admission to appear in this case. We respectfully request the Court withhold judgment on this matter until that appearance in order to allow more facts about the current U.S. Department of Treasury's Inspector General's investigation to be made available.

### III. Denying Mr. Avenatti's Motion Would Not "Deny" Ms. Clifford Counsel

Mr. Avenatti also stated as justification for his admission that Ms. Clifford should not be "denied counsel." ECF 47 at 4. However, by denying Mr. Avenatti's motion, the Court would not be denying Ms. Clifford representation by counsel. While the Supreme Court has recognized "a presumption in favor of petitioner's counsel of choice[,]" that presumption may be overcome. *Wheat v. United States*, 486 U.S. 153, 164 (1988). The Second Circuit has recognized that the qualified right to counsel of one's choice "may be overcome when it is outweighed by competing interests in the fair administration of justice or maintaining orderly trial procedures" and notes that a "defendant may not insist on counsel who is not admitted." *Lainfiesta v. Artuz*, 253 F.3d 151, 154 (2d Cir. 2001); *see also Gutierrez*, 1994 WL 593773, at *2—3 (stating that a party

"does not have an unfettered right to choose counsel who is not admitted to practice in this Court.").

By denying Mr. Avenatti's motion, the Court would not deny Ms. Clifford her right to counsel. Rather, the Court would simply not extend Mr. Avenatti the privilege of appearing in this case before the Court.

***

We believe that it is vital that the Court inquire as to where Mr. Avenatti obtained the SARs report(s) and related nonpublic bank records of Mr. Cohen. Those bank records and reports are not attorney work product. They were purloined from protected federal agency files and made public by Mr. Avenatti. If he fails to answer, he should not be admitted *pro hac vice* in this proceeding before the Court.

While it is rare to deny a motion to proceed *pro hac vice*, Mr. Avenatti's conduct up to this point does not comport with the "high standards of the Southern District of New York." *Gianni Versace, S.p.A. v. Versace*, No. 01CIV.9645PKLTHK, 2003 WL 470340, at *3 (S.D.N.Y. Feb. 25, 2003). To our knowledge, this Court has never been presented with clearer evidence of the deliberate creation of a carnival atmosphere and inappropriate conduct while an attorney's application for admission was pending. Moreover, this is an unprecedented attack on an individual who has not been charged with any crime.

For the reasons set forth here and in our letter dated May 9, 2018, we respectfully request that the motion to admit Michael J. Avenatti *pro hac vice* be denied.

Dated: May 18, 2018
New York, New York

/s/ Stephen M. Ryan
MCDERMOTT WILL & EMERY LLP
Todd Harrison
Stephen M. Ryan (*pro hac vice*)
Joseph B. Evans
340 Madison Avenue
New York, New York 10173-1922
(212) 547-5400

*Attorneys for Michael D. Cohen*