**New York Law Journal**                        NOT FOR REPRINT

🖨 **Click to print** or Select **'Print'** in your browser menu to print this document.

Page printed from: *https://www.law.com/newyorklawjournal/2018/05/25/behind-the-law-firm-brawl-that-could-cost-michael-avenatti-millions/*

# Behind the Law Firm Brawl That Could Cost Michael Avenatti Millions

Avenatti's firm and his former colleagues there paint very different pictures of the events that led to a $10 million judgment this month.

By Christine Simmons | May 25, 2018

While Michael Avenatti has been loudly battling with lawyers for Michael Cohen and President Donald Trump



*Stormy Daniels' attorney Michael Avenatti leaves federal court in Manhattan on April 26. Photo: David Handschuh/NYLJ*

(https://www.law.com/newyorklawjournal/2018/05/14/answering-critics-

avenatti-says-slaying-goliaths-is-his-business-model/), he's also been quietly litigating against a former partner for more than two years, leading to a headline-grabbing $10 million judgment (https://www.documentcloud.org/documents/4483316-EaganAvenatti-Judgment.html) on May 22 against one of his law firms, Eagan Avenatti.

Avenatti has called reports about the judgment "overblown (http://www.latimes.com/politics/la-na-pol-avenatti-bankruptcy-20180522-story.html)," and he told New York Law Journal in an email that he rejects the amounts being demanded.

But whatever it may cost him, the dispute—involving three firms, including one in Bankruptcy Court, and dueling claims and counterclaims across multiple venues—offers a glimpse into Avenatti's business past, before he became a star cast member in the legal and media spectacle now surrounding the presidency.

The dispute centers on Eagan Avenatti, where Avenatti remains managing partner, and three lawyers who left to form a law firm of their own—Irvine, California-based Frank Sims & Stolper. Eagan Avenatti has accused them of siphoning off settlement proceeds and clients, while one of the three attorneys, Jason Frank, claims Eagan Avenatti stiffed him out of millions of dollars.

Avenatti said in an email that he practices under both Eagan Avenatti and Avenatti & Associates, which share the same Newport Beach, California, address. He used the latter firm's name for his work as counsel to Stephanie Clifford, the pornography actress known as Stormy Daniels, in litigation tied to a $130,000 hush money payment from Cohen, the president's longtime attorney and fixer.

The other name partner at Eagan Avenatti, San-Francisco-based Michael Eagan, did not respond to requests for comment. According to court documents (https://www.documentcloud.org/documents/4483407-EA-Casemanagement-Plan.html), the firm employs up to nine attorneys and has handled high-profile class actions and contingency fee lawsuits. Among its cases, last year the firm won a $454 million jury verdict against Kimberly-Clark Corp. and Halyard Health Inc. in a class action over defective surgical gowns.

Eagan Avenatti said in court documents that its estimated gross revenue was about $7.7 million in 2016, although other court papers point to much more. Avenatti himself was paid about $1 million in 2015 and then $850,000 in 2016, court papers said.

### 'Plotting to Take Cases'

Despite that success, Eagan Avenatti was beset by serious problems, according to both the firm and Frank, the former lawyer there.

According to a new lawsuit (https://www.documentcloud.org/documents/4483414-Frank-Avenatti-Complaint.html) brought by Frank this month and an arbitration demand he served in 2016, Avenatti refused to pay Frank his rightful compensation under a contract while Frank practiced at Eagan Avenatti.

In response, Eagan Avenatti alleged in arbitration counterclaims and in its own bankruptcy case that Frank and two other firm attorneys, Scott Sims and Andrew Stolper, were working to launch their own firm while still practicing at Eagan Avenatti.

Avenatti's firm claimed that the three were terminated in May 2016 due to breaches of fiduciary duty and "underhanded dealings in attempting to secretly establish a competing law firm." Eagan Avenatti said it discovered that the three had been using work hours to plan the competing law firm and "plotting to take cases."

Sims was physically escorted out of the firm's office, and he quickly formed a new firm, Eagan Avenatti asserted. "They then proceeded to convince various [Eagan Avenatti] clients to leave" and install their firm, Frank Sims & Stolper, as counsel, Avenatti's firm claimed in court documents.

Avenatti's firm said it had to invest millions of dollars in investigating claims for its client cases. And when "the former employees took substantial business with them," it left the law firm "with substantial sunk costs in approximately 17 different matters," the firm said.

Eagan Avenatti asserted attorney liens on those clients matters and in some cases filed claims against former clients seeking to recover fees.

In a statement, Eric George, a partner at Browne George Ross who represents Frank, said Eagan Avenatti's "counterclaims were laughable, thrown out of arbitration, and then—for good measure—released as part of the settlement agreement wherein Mr. Avenatti agreed his firm owed Mr. Frank $10 million."

**'Stench of Impropriety'**

Frank Sims & Stolper and its partners have claimed that Avenatti is personally liable for substantially all claims they have against Eagan Avenatti, and that Avenatti & Associates may also be liable, which Avenatti disputes.

In his new lawsuit and in his 2016 arbitration case, Frank claims he was working as an attorney at Avenatti's firm under an "independent contractor agreement," in which he was to be paid a quarter of the firm's annual profits and 20 percent of all fees paid by his own clients.

Frank, a former Paul Hastings (https://www.law.com/law-firm-profile?id=232&name=Paul-Hastings) partner who had a partner title at Eagan Avenatti, alleges the firm violated the agreement by failing to pay millions of dollars owed under it, failing to provide copies of tax returns and other financial information required under the agreement, and misstating the firm's profits.

Frank resigned from Eagan Avenatti a few months after he filed his demand for arbitration against the firm in February 2016. About a year later, in February 2017, a three-judge arbitration panel found that Avenatti's firm had "acted with malice, fraud and oppression by hiding its revenue numbers" and tax returns from Frank. The panel also issued sanctions against Avenatti's firm for failing to comply with discovery orders, according to court documents.

But soon after, a purported creditor of the firm, Gerald Tobin, filed a petition to place the firm into involuntary Chapter 11 bankruptcy. Eagan Avenatti consented to the bankruptcy, triggering a stay and preventing the trial in the arbitration from going forward.

"Avenatti subsequently denied playing any role in orchestrating Tobin's involuntary bankruptcy petition," Frank said in court documents, noting a Florida judge initially hearing the bankruptcy case suggested that Tobin's papers have "a stench of impropriety."

In December 2017, the parties, including Avenatti, Frank and their firms, signed a settlement agreement to resolve their claims.

Under the settlement, Frank's corporation agreed to a general unsecured claim of $10 million, but the parties agreed that Eagan Avenatti would pay only $4.85 million. As long as the firm and Avenatti, as guarantor, didn't default under a payment schedule, Frank's corporation would waive its right to collect the remaining $5.15 million of the allowed claim, according to the settlement papers. (In early 2018, Avenatti's firm also agreed that the IRS was due nearly $2.4 million in taxes and penalties.)

In March, U.S. Bankruptcy Court Judge Catherine Bauer of the Central District of California approved the parties' settlement and dismissed the firm's bankruptcy case.

But the May 14 deadline came and went without the first $2 million installment payment due to Frank. Soon after, Frank moved to reopen the bankruptcy case, leading Bauer to enter a $10 million judgment against Eagan Avenatti on Tuesday.

After Avenatti missed the payment deadline this month, Frank's corporation also [filed suit against Avenatti individually in Los Angeles Superior Court (https://www.documentcloud.org/documents/4483414-Frank-Avenatti-Complaint.html)](https://www.documentcloud.org/documents/4483414-Frank-Avenatti-Complaint.html), seeking the first installment payment of $2 million.

Avenatti's litigation with Frank is not the first time he has battled with colleagues. One of his former partners, John C. O'Malley, sued after being allegedly pushed out by Avenatti. [The Los Angeles Times reported (http://www.latimes.com/politics/la-na-pol-avenatti-stormy-trump-20180407-story.html)](http://www.latimes.com/politics/la-na-pol-avenatti-stormy-trump-20180407-story.html)the matter resulted in a $2.7 million payment for O'Malley.

Meanwhile, Avenatti's firm has been litigating with another plaintiff's personal injury firm, Los Angeles-based Stoll, Nussbaum & Polakov, since 2011 over a dispute arising from a fee sharing agreement.

In an email, when asked to comment on the disputes involving former Eagan Avenatti attorneys and the $10 million judgment, Avenatti, represented by Mark Horoupian, of SulmeyerKupetz, said, "We dispute the amount that is claimed owed."

Sims, Frank's current partner who initiated his own arbitration case against Eagan Avenatti for money he claimed the firm owed him, said in a statement that as part of the December settlement, Eagan Avenatti waived any right it had to attorneys fees from clients who moved from the firm to Frank Sims & Stolper, and "we didn't pay Eagan Avenatti or Mr. Avenatti a penny."

He added, "It's unfortunate Mr. Avenatti is now trying to relitigate cases which his firm agreed to pay significant money to settle."

**Copyright 2018. ALM Media Properties, LLC. All rights reserved.**