**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In the Matter of Search Warrants Executed on April 9, 2018* | |
| MICHAEL D. COHEN,<br><br>                      Plaintiff,<br><br>   - against –<br><br>UNITED STATES OF AMERICA,<br><br>                      Defendant. | 18-MJ-3161 (KMW)<br><br>**FURTHER SUPPLEMENTAL AFFIDAVIT OF MICHAEL J. AVENATTI IN SUPPORT OF MOTION FOR ADMISSION *PRO HAC VICE*** |

Michael J. Avenatti, being duly sworn, hereby deposes and says as follows:

1.     I submit this affidavit in further support of my motion for admission to practice *pro hac vice* in the above captioned matter.

2.     Earlier today, I was named as a finalist for Public Justice's Trial Lawyer of the Year Award as a result of the $454 Million class action jury verdict I obtained last year in Federal District Court (Hon. D. Gee) on behalf of surgeons, nurses, hospitals and trauma centers that had been defrauded. As I am sure the Court is well aware, Public Justice pursues high impact lawsuits to combat social and economic injustice, protect the Earth's sustainability, and challenge predatory corporate conduct and government abuses. The group presents its Trial Lawyer of the Year award to the attorney(s) who made the greatest contribution to the public interest within the past year by trying or settling a precedent-setting, socially significant case. A true and correct copy of the announcement from Public Justice is attached hereto as Exhibit A.

1

3. By way of his submission earlier today, Mr. Cohen has brought to the Court's attention a number of alleged irrelevant "facts." [Dkt. No. 66] In the interest of conserving this Court's invaluable time, we will not respond to every inaccuracy but we do wish to inform the Court of the following:

    A. The firm of Eagan Avenatti, LLP is not the law firm for Ms. Daniels in this matter or any other matter nor have they ever represented Ms. Daniels. Ms. Daniels is represented by undersigned counsel of Avenatti & Associates, APC.

    B. No arbitration panel ever found that Eagan Avenatti, LLP acted with malice, oppression and fraud. Rather, the panel permitted a former non-equity partner of the firm to amend his arbitration claim for punitive damages and seek such a finding. The arbitration was subsequently dismissed by the agreement of all parties and therefore no final orders were ever issued. Accordingly this is a red herring designed to distract the Court away from the simple issues associated with the *pro hac vice* application.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 29th day of May 2018, at New York, New York.

          /s/ Michael J. Avenatti
Michael J. Avenatti
AVENATTI & ASSOCIATES, APC
520 Newport Center Drive, Suite 1400
Newport Beach, CA 92660
Tel: (949) 706-7000
Fax: (949) 706-7050
E-Mail: mavenatti@eoalaw.com

EXHIBIT A

Login   Submit A Case   Contact



WHO WE ARE   |   WHAT WE DO   |   NEWS   |   EVENTS   |   ACTION   |   SUPPORT

# PUBLIC JUSTICE ANNOUNCES FINALISTS FOR 2018 TRIAL LAWYER OF THE YEAR AWARD



May 29, 2018   /   In Updates

## PUBLIC JUSTICE ANNOUNCES FINALISTS FOR 2018 TRIAL LAWYER OF THE YEAR AWARD

The four finalist cases for Public Justice's 2018 Trial Lawyer of the Year Award include landmark cases dealing with fraud in medical equipment, discrimination in providing spousal health insurance benefits, fraudulent debt collection, and child sex tourism.

The award celebrates and recognizes the work of an attorney or team of attorneys working on behalf of individuals and groups that have suffered grave injustice or abuse. It will be presented at the organization's **Annual Gala and Awards Dinner on Monday, July 9 in Denver.** Here are the four finalist cases for the award:

**Bahamas Surgery Center v. Kimberly-Clark**

MicroCool surgical gowns were marketed as the safest and most protective gowns available anywhere in the world. They were recommended hospital attire for healthcare professionals working with Ebola patients and for surgeries on patients with some of the most highly transferrable blood diseases, including HIV/AIDS and Hepatitis. But the gowns' manufacturers—Kimberly-Clark Corporation and Halyard Health, Inc.—knew as far back as 2012 that the gowns were actually defective and had failed numerous tests, leaving healthcare professionals and patients exposed to serious health risks.

Despite internal emails and documents describing the machines used to make the gowns as being alarmingly substandard, Kimberly-Clark and Halyard failed to alert the FDA, health professionals or patients. Employees

Search Here

### ARCHIVES

May 2018
April 2018
March 2018
February 2018
January 2018
December 2017
November 2017
October 2017
September 2017
August 2017
July 2017
June 2017
May 2017
April 2017
March 2017
February 2017
January 2017
December 2016
November 2016
October 2016
September 2016
August 2016
July 2016
June 2016

who knew too much were fired and the manufacturers even exploited the Ebola crisis to increase sales, continuing to make and sell millions to unsuspecting medical professionals.

When faced with litigation, the companies attempted to have the case dismissed, to defeat class certification (and then appeal the certification), to demand summary judgment, and to disqualify plaintiffs' counsel. In total, Kimberly-Clark and Halyard spent more than $50 million in attorneys' fees to try and shield themselves—and their dangerous and defective product—from accountability. Despite their efforts, however, a unanimous jury awarded more than $454 million in punitive and compensatory damages against them. The Centers for Disease Control and Prevention subsequently "quarantined" some of its own stock-piled MicroCool gowns and announced they had no intention of ever using them.

Team: **Michael J. Avenatti**, **Ahmed Ibrahim**, and **Filippo Marchino**, Eagan Avenatti LLP, Newport Beach, Ca.; **Edward Ricci**, Ed Ricci Law, Palm Beach Gardens, Fla.; **William C. Hearon**, Miami, Fla.

*Cote v. Wal-Mart*

When longtime Wal-Mart employee Jacqueline Cote attempted to enroll her wife, Dee Smithson, in the company's health insurance plan, she was told that Dee did not qualify for spousal benefits because the company only offered health insurance coverage to opposite-sex spouses. Dee, who had previously been treated for breast cancer, was diagnosed with ovarian cancer in August 2012 and lost her individual health insurance two months later. Over the next year, the couple racked up more than $150,000 in out-of-pocket medical expenses for Dee's treatment.

In 2014, GLBTQ Legal Advocates & Defenders (GLAD) filed a class-based charge of discrimination against Wal-Mart with the Equal Employment Opportunity Commission (EEOC), alleging that Wal-Mart's refusal to give spousal benefits to employees who were legally married to persons of the same sex violated Title VII's prohibition on sex discrimination. In January 2015, the EEOC agreed that it did.

In the wake of the EEOC's decision, Jackie filed a nationwide class action suit to seek justice and equality for all Wal-Mart employees whose spouses had been denied health benefits. Three law firms and groups joined GLAD in representing Jackie: Outten & Golden LLP, the Washington Lawyers' Committee for Civil Rights & Urban Affairs, and Arnold & Porter LLP.

The case presented a number of tough legal and factual issues: Did Title VII protect LGBT workers? How could the team certify a class or identify class members, since Wal-Mart did not keep records of which employees had same-sex spouses during the class period? How could they measure class members' damages? And what, if any, impact would the federal Defense of Marriage Act (DOMA)—which the Supreme Court struck down in 2013, after Jackie and Dee had been denied spousal benefits—have on interpreting Title VII in a case involving same-sex spouses?

Following months of litigation and settlement negotiations (including dozens of hours of mediation on three separate days), class counsel addressed all of these issues or obstacles, negotiating a historic $7.5 million settlement – the first class certification and settlement for LGBT workers challenging workplace discrimination. The settlement provided substantial monetary relief to the couples who were impacted by Walmart's policy, with class members receiving payments that were *greater* than the value of the health benefits they had been denied, along with a promise from Walmart to treat same-sex and opposite-sex couples equally when providing health benefits. Through court-approved notice, class members were identified and able to submit claims to receive significant payments under the settlement.

The *New York Times* hailed the settlement as a major victory, adding that the settlement "signals how legal doctrine on discrimination against gays and lesbians is rapidly changing, making it increasingly likely to be considered a form of sex discrimination," and that the settlement "reflect[s] the growing acceptance of [the EEOC's] analysis [of LGBT rights] by private sector employers."

Team: **Gary D. Buseck**, **Allison Wright**, and **Janson Wu** GLBTQ Legal Advocates & Defenders, Boston, Mass.; **Matthew Handley** and **Christine Tschiderer Dinan**, Washington Lawyers' Committee for Civil Rights & Urban Affairs, Washington, D.C.; **Juno Turner**, Outten & Golden, New York, N.Y.; **Sally J. Abrahamson** and **Peter Romer-Friedman**, Outten & Golden, Washington, D.C.; **Peter Grossi**, **John Freedman**, **Sarah Warlick**, and **Whitney Moore**, Arnold & Porter, Washington, D.C.

*Inetianbor v. Western Sky Financial*

Predatory payday lender CashCall was notorious for granting loans with excessively high interest rates and then evading justice by forcing borrowers into a Native American tribal law-based arbitration system that, they claimed, was protected by tribal sovereign immunity and off-limits to American courts. One CashCall client, Abraham Inetianbor, already had a federal court order entered against him, granting CashCall's motion to enforce arbitration, when he contacted the law firm of Wallace & Graham for help.

May 2016
April 2016
March 2016
February 2016
January 2016
December 2015
November 2015
October 2015
September 2015
August 2015
July 2015
June 2015
May 2015
April 2015
March 2015
February 2015
January 2015
December 2014
November 2014
October 2014
September 2014
August 2014
July 2014
June 2014
May 2014
April 2014
March 2014
February 2014
January 2014
December 2013
November 2013
October 2013
September 2013
August 2013
July 2013
June 2013
May 2013
April 2013
March 2013
February 2013
January 2013
December 2012
November 2012
October 2012
September 2012
August 2012
June 2012
May 2012

Recognizing the case as an opportunity to take on CashCall's deceptive practices, counsel subsequently submitted recordings of the telephonic arbitration Inetianbor was forced to participate in, resulting in the federal court for the Southern District of Florida electing to reconsider its order to enforce arbitration. The court vacated that prior ruling, finding the arbitration clause void due to a lack of safeguards or rules. The record reflected a misuse of tribal law by a predatory lender who was not working in the best interests of the Cheyenne River Sioux Tribe and indeed was not affiliated with them. The Eleventh Circuit upheld the lower court's ruling, clearing the way for counsel to also successfully intervene with other consumer firms to stop an undervalued settlement against the CashCall enterprise in South Dakota, which would have resulted in only $7 million in recovery while eliminating all other claims nationwide.

Following counsel's intervention, state-by state settlements with CashCall have since been concluded for more than ten times the total relief of the proposed South Dakota settlement.

As part of their litigation, plaintiffs coordinated with the Florida Attorney General and the Florida Office of Financial Regulation, resulting in a representative for the Florida Attorney General's Office speaking in favor of the civil action and class certification. After certification was granted, arduous mediation proceedings followed, finally resulting in payment of fines and restitution to the Florida agencies, a gross fund in the private class action, and equitable relief through the voiding of thousands of loans, representing tens of millions of dollars of debt lifted off the shoulders of Florida borrowers. As the court noted in granting final approval to the settlement in May 2017, "the combined total value of the settlement is close to $30 million," including a cash fund of $14,417,810 for those class members who were charged interest rates over 18%, and the cessation of collection and enforcement of about $15 million in loan balances. The defendants were permanently enjoined from future lending in Florida.

The case serves as an important precedent on tribal lending, exposing the limits of for-profit lenders when they try to conceal their schemes behind a veneer of tribal immunity. As importantly, the case reflects that even after U.S. Supreme Court rulings have made it more difficult to attack abusive arbitration contracts, it can still be possible to do if the facts are well-documented in the record to show the Court the unfairness. Plaintiffs' counsel's work is also an important example of working with government actors, rather than treating them as competitors. The result was a symbiotic, ethical, information-sharing relationship that paid off with a coordinated resolution.

Team: **Mona Lisa Wallace** and **John S. Hughes**, Wallace & Graham, PA, Salisbury, N.C.; **Janet Varnell** and **Brian Warwick,** Varnell & Warwick, PA, Lady Lake, Fla.; **Cathy Anne Williams** and **Aaron Goss**, formerly of Wallace & Graham

*Vang v. Prataya*

In 2006, Thiawachu Prataya, a U.S. citizen, traveled to Laos and brutally raped 14-year old Panyia Vang, who became pregnant as a result of the rape and suffered immense physical and emotional pain caused by the sexual assault. Prataya, however, was never charged with a crime.

In 2011, Vang met attorney Linda Miller and, the following year, Vang filed an unprecedented lawsuit seeking monetary damages for violations of federal laws against child sex tourism and trafficking.

On May 11, 2017, after a three-day trial in federal district court in Minnesota, the jury—after deliberating for approximately 10 hours—returned a complete victory for Vang on all three issues: the verdict stated that the defendant engaged in a sexual act with the plaintiff by using force against her, confirmed that the plaintiff was under 16 years of age at the time, and the court awarded Vang (who has full custody of her child) $950,000 in damages.

Believed to be the first civil jury verdict in a sex tourism case, the matter received widespread international coverage in publications ranging from the Associated Press to the Minneapolis Star-Tribune. Filed in 2012 and citing Masha's Law, a 2006 federal statute that affords children the right to sue anyone who produces, distributes, or possesses pornographic images of them, the significance and impact of the verdict is undeniable. The case has sent a strong message that sex tourism will not be tolerated, and proved that U.S. citizens who travel overseas to engage in illicit sexual conduct can be tried and held accountable in federal court.

Team: **Patrick Arenz,** Robins Kaplan LLP, Minneapolis, Minn.; **Adam Kohnstamm**, formerly of Robins Kaplan LLP, Minneapolis, Minn.; **Linda A. Miller,** Linda A. Miller, P.A. and Civil Society, St. Paul, Minn.



*April 2012*

### META

Log in

Entries RSS

Comments RSS

WordPress.org

### TAGS

AGRICULTURE   ANNUAL GALA

ARBITRATION

CALIFORNIA SUPREME COURT

CARE2   CFPB

CLASS ACTIONS   CONGRESS

CONSUMER PROTECTION

CONSUMERS   CPSC

DIRECTV   DOJ

EARTHQUAKES   ELECTION

EPA   ESCAMILLA

FACTORY FARMS   FOOD SAFETY

FRACKING   H.R. 985

HILLARY CLINTON

ILLUMINATING INJUSTICE

MEDIA   NEWSWEEK

NOVARTIS   NURSING HOMES

OKLAHOMA   PAYDAY LENDING

PERSONAL JURISDICTION

POLICE BRUTALITY

PRESCRIPTION DRUGS   PRUITT

RAFAEL SOLIS   SCHOOLS

SEVENTH CIRCUIT   SIERRA CLUB

SUPREME COURT

TELEPHONE CONSUMER PROTECTION ACT

TEXAS   TITLE IX

TRANSGENDER   TRUMP

WELLS FARGO

WORKERS' RIGHTS



NATIONAL HEADQUARTERS: 1620 L STREET NW, SUITE 630, WASHINGTON, DC 20036 | PH: 202-797-8600 | FAX: 202-232-7203

WEST COAST OFFICE: 475 14TH STREET, SUITE 610, OAKLAND, CA 94612 | PH: 510-622-8150

PRIVACY POLICY   TERMS OF USE

DESIGN BY DENSON DESIGN DEVELOPED BY DUKE MEDIA SERVICES